ROY NOBLE LEE, Presiding Justice,
for the Court:
Peoples Bank of Indianola filed suit against Betty June Crosby and Ira Tal-madge Crosby, Jr. claiming the balance due on a certain promissory note from Century Mississippi Corporation, which balance was approximately one hundred eighty thousand dollars ($180,000). The Circuit Court of Sunflower County, Mississippi, sitting without a jury, found in favor of Peoples Bank and ordered that the note be surrendered to the Peoples Bank after satisfaction of Mrs. Crosby’s prior one hundred thousand dollar ($100,000) claim in it. The Crosbys have appealed to this Court.
The overriding question in this case is who had the superior interest in the balance of the note, viz, Betty Crosby or Peoples Bank?
Betty Crosby and Ira Talmadge Crosby, Jr., wife and husband, each owned an interest in a cable television corporation, i.e., Crosby Cable, Inc., which sold its assets to Century Mississippi Corporation in November, 1980, for the sum of two hundred eighty thousand dollars ($280,000), evidenced by a promissory note. Mrs. Crosby’s interest in Crosby Cable, Inc. was calculated to be one hundred thousand dollars ($100,000) from the sale, and Crosby Cable, Inc. executed and delivered to Mrs. Crosby its note for that amount on October 31, 1980. The $280,000 Century note, payable to Crosby Cable, Inc., was assigned to Mrs. Crosby as security November 15, 1980. Possession of the Century note and a security agreement were delivered to W. Dean Belk, attorney and agent for Mrs. Crosby, and has been retained by him since that time.
After selling the Crosby Cable, Inc. property, Crosby formed a new corporation, Mississippi Woodworks, Inc. That business was designed to manufacture raw lumber into pallets and Crosby obtained financing from the Peoples Bank for the purchase of machinery and for operating the business. Notes were executed in the name of Mississippi Woodworks, Inc., in the joint names of Mississippi Woodworks, Inc. and Crosby, and some individually in Crosby’s name. The business did not do well and Crosby had to obtain a renewal of the notes. The bank required additional collateral and prepared documents for Crosby to sign, including an assignment of the balance of the Century note (after payment of the $100,000 to Mrs. Crosby). On May 17, 1982, when the renewal transaction occurred, Crosby signed some of the notes, together with an assignment of the Century note, but refused to sign several renewal notes in his individual capacity.
Peoples Bank bases its suit upon the renewal transaction and the assignment to it of the Century note by Crosby. The assignment authorized the Peoples Bank to deliver a copy of the assignment to Mrs. Crosby’s attorney, W. Dean Belk, and directed Belk to deliver the note to the Peoples Bank when Mrs. Crosby’s $100,000 interest was satisfied.
On June 9, 1982, Betty Crosby and Ira Talmadge Crosby, Jr. executed an instrument entitled “Child Custody and Support and Property Settlement Agreement.” On the same date, they filed a joint complaint for divorce in the Chancery Court of Sunflower County, Mississippi, on the ground of irreconcilable differences, pursuant to Mississippi Code Annotated § 93-5-2 (1972). Final decree divorcing the parties and approving the separate agreement was entered by the court September 10, 1982.
The separation agreement provided that, as lump sum alimony and in lieu of child support, Crosby would convey, set over and assign unto Mrs. Crosby any and all of his interest in the balance due on the Century note, dated November 6, 1980, in the original principal sum of $280,000. Crosby actually assigned that note to Mrs. Crosby on June 28, 1982. Crosby Cable, Inc., by Ira T. Crosby, Jr., President, assigned Betty Crosby all of its interest in the Century note, dated November 6, 1980, on the ninth day of June, 1982, although it had previous *953 ly assigned the note to Ira T. Crosby, Jr. on October 15, 1981.[1]
On June 15, 1982, Peoples Bank filed notice of its interest under the Crosby assignment, although it did not file with the Secretary of State’s Office until August 17, 1982. Notice of the Crosby assignment to Peoples Bank was forwarded to Mrs. Crosby’s attorney, W. Dean Belk, and received by him on June 17, 1982. Peoples Bank acknowledged that it had actual notice of the separation agreement and divorce action between Betty Crosby and Ira T. Crosby, when they were filed on June 9, 1982.
The lower court, in arriving at its decision, answered three questions: (1) that there was a valid delivery of the assignment of the Century note from Ira T. Crosby, Jr. to Peoples Bank; (2) that the signing and filing of the property settlement agreement did not constitute a valid security interest and that Mrs. Crosby’s interest was not perfected until September 19,1982, when the divorce was granted to the parties, and, therefore, was inferior to Peoples Bank; and (3) that Peoples Bank perfected its interest on June 17, 1982, when a notice of the assignment of Crosby to Peoples Bank was received by attorney W. Dean Belk on June 17, 1982, and that Peoples Bank’s interest was superior to that of Mrs. Crosby.
Crucial to the decision in this case is the effect of the continued possession of the Century note by Mrs. Crosby and whether or not the property agreement executed by the Crosbys on June 9, 1982, perfected a valid interest in the balance of the Century note to Mrs. Crosby.
The lower court held that the property settlement agreement was not an assignment; that any filing in the chancery clerk’s office of the property settlement agreement did not constitute proper notice; that Mrs. Crosby had to rely on her assignment dated June 28 and its perfection on July 12, 1982, in order to establish her interest; and that her interest was not valid until September 19, 1982, when the divorce between the Crosbys became final.
The lower court relied for its decision on Johnson v. Collins, 419 So.2d 1029 (Miss. 1982), noting that delivery of certain certificates of deposits to the wife in accordance with the terms of a property .settlement agreement in a divorce action was conditional. However, we distinguish Collins from the case sub judice. In Collins, a separation agreement executed by the husband and wife provided the following:
This Agreement entered into this day by and between ALLEN E. COLLINS, hereinafter called “Husband” and SY-YILLA J. REEVES COLLINS, herein-aftered called “Wife”;

Witnesseth:

Whereas, the parties are now separated and do not believe that a reconciliation of their differences is possible at this time; and
Whereas, said parties desire to resolve all questions of property rights in order that a Joint Bill of Complaint for Divorce may be later filed;
NOW THEREFORE, for an [sic] in consideration of the premises, and in consideration of the mutual promises of the parties, Husband and Wife do hereby enter into the following separation agreement: ...
419 So.2d at 1031.
After delivery of the certificates of deposit to his wife, Mr. Collins died before the divorce was granted. The co-executors of the deceased husband’s estate brought suit to recover the certificates and the widow claimed that they constituted an inter vivos gift. This Court held that transfer of the certificates of deposit was not a free and voluntary act with the intention to make a gift, but, rather, a transfer of property executed pursuant to a separation agreement prepared in contemplation of obtaining a divorce due to irreconcilable differences, and did not constitute a valid gift inter vivos. The facts and agreement in *954 the case sub judice differ from Collins. The instrument here is entitled “Child Custody and Support and Property Settlement Agreement” and pertinent parts of the agreement follow:
WHEREAS, the parties hereto were married on the 24th day of December, 1950 in Indianola, Sunflower County, Mississippi, and separated on or about the 1st day of June, 1982 in Indianola, Sunflower County, Mississippi, and since that date have been living separate and apart; and,
4s 4c sfc sH 4¡ 4c
WHEREAS, the parties desire to confirm their separation and make arrangements in connection therewith, including arrangements for the custody and maintenance of the minor child and settlement of the property rights of the parties and other rights and obligations growing out of the marriage relation.
IT IS, THEREFORE, AGREED:
I. SEPARATION
The parties may and shall at all times hereafter live and continue to live separate and apart. Each shall be free from interference, authority and control, direct or indirect, by the other as fully as if he or she were single and unmarried. The parties shall not molest each other or compel or endeavor to compel the other to cohabit or dwell with him or her by any legal or other proceedings for restitution of conjugal rights or otherwise.
* ⅜ ⅝ ⅜ ⅜ ⅜
III. CHILD SUPPORT AND ALIMONY
As lump sum alimony and in lieu of child support for the minor child of the parties, namely: David Greg Crosby, the HUSBAND shall convey, set over and assign unto the WIFE any and all of his interest in the balance due on that certain Promissory Note dated November 6, 1980, in the original principal sum of $280,000.00, a copy of same being attached hereto and marked as Exhibit “A”.
* * * * ⅜: *
VIII. MUTUAL RELEASES
Except as otherwise provided in this Agreement, each party shall be fully released by the other from any obligation for alimony, support and maintenance, and each accepts the provisions hereof in full satisfaction of all obligations for support and otherwise arising out of the marital relationship of the parties, and each relinquishes any right or claim in the earnings, accumulations, money or property of the other.
Subject to the provisions of this Agreement, each party remises, releases and forever discharges, and by these presents does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns remise, release and forever discharge the other of and from all causes of action, claims, rights or demands whatsoever, in law or in equity, which either of the parties hereto has ever had or now has against the other, except any or all cause or causes of action for divorce.
IX. WAIVER OF CLAIM AGAINST ESTATES
Subject to the provisions of this Agreement, each of the parties may in any way dispose of his or her property of whatsoever nature, real or personal, and each of the parties hereto, for himself or herself, and for his or her heirs, legal representatives, executors, administrators and assigns, hereby waives any rights of election which he or she may have or hereafter acquire regarding the estate of the other, and hereby waive any right to take against any Last Will and Testament of the other, regardless of when such will is executed. Each party will, at the request of the other party, or his or her legal representatives, executors, administrators or assigns execute, acknowledge and deliver any and all deeds, releases, or any other instruments necessary to bar, release or extinguish such interests, rights and claims, or which may be need *955 ed for the proper carrying into effect of any of the provisions of this Agreement.
******
XI. SUBSEQUENT DIVORCE
In the event that an action for divorce is instituted at any time hereafter by either party against the other in this or any other State or Country, the parties hereto agree that they shall be bound by all the terms of this Agreement and that this Agreement shall survive any decree or judgment that may be granted in such action and shall forever be binding and conclusive upon the parties. Nothing herein contained shall serve to prevent the terms of this Agreement from being incorporated in full or in substance into the final decree of any such actions.
Although a divorce action was filed by the Crosbys on June 9, 1982, along with the settlement agreement, we are of the opinion that the agreement was binding and effective upon the parties even though a divorce action, subsequently, may never have been filed or a decree of divorce entered. The parties could have lived separate and apart for the rest of their lives and the instrument would have been binding upon them. The instrument constituted a valid, enforceable contract at the time of its execution and delivery on June 9, 1982.
Appellee takes the position that the separation agreement was not valid and enforceable until a divorce was granted because of Mississippi Code Annotated § 93-5-2 (Supp.1982), referred to as the “No-Fault Statute” which follows:
No divorce shall be granted on the ground of irreconcilable differences unless the Court shall find in its decree that the parties have made adequate and sufficient provision by written agreement for custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties.
Under the statute, although a no-fault divorce may not be granted without the parties having made provisions by written agreement for custody and maintenance of children and for settlement of property rights between the parties, it does not delay the effective date of a separation agreement until a no-fault divorce is granted.
Mississippi Code Annotated § 75-9-304(1) (1972) provides the following:
A security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in money or instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party’s taking possession, except as provided in subsections (4) and (5) of this section and section 75-9-306(2) and (3) on “Proceeds”.
The subsections (4) and (5) referred to above have no relevance to the present case.
In Bowles v. City National Bank & Trust Company, 537 P.2d 1219 (Okla.App.1975), receiver for a debtor contended that City Bank had wrongfully discharged notes payable to the debtor, since the bank had constructive notice because of a security interest filing of a prior claim of another bank. City Bank had possession of the notes and the Court said:
First, Federal Bank’s claim, as will be shown, cannot be accorded priority over City Bank’s claim in the notes, and second, City Bank never “discharged” or “disposed” of the two notes. Federal Bank never perfected a security interest in the two notes because it never took possession of the notes, which is the only method of perfecting a security interest in the two notes. 12A O.S.1971, Section 9-304.
537 P.2d at 1222. See also In re Bruce Farley Corp., 612 F.2d 1197 (9th Cir.1980); Continental Bankers Life Ins. v. Bank of Alamo, 578 S.W.2d 625 (Tenn.1979).
In City National Bank of Miami, N.A. v. Wernick, 368 So.2d 934 (Fla.App.1979), the rights of a payee on a check were involved, but the importance of possession of commercial paper was noted:
*956 The rule that the “delivery” of an instrument is indispensable to its effectiveness is one of the most ancient and basic in commercial law. 10 C.J.S. Bills and Notes, Section 202 (1938). As the Florida law was expressed by the fifth circuit in City of New Port Richey v. Fidelity & Deposit Co. of Maryland, 105 F.2d 348, 350 (5th Cir.1939):
“As between the immediate parties and all others not holders in due course, delivery is essential to the existence of the instrument as a legal obligation. Until put in operation by delivery, the original instrument and indorsements of it are, as to such parties, incomplete and revocable, and a delivery may be shown to have been conditional or for a special purpose.”
368 So.2d at 936.
Appellee Peoples Bank contends that Mrs. Crosby did not have a perfected interest in the balance of the Century note on account of the separation agreement and that possession of the note did not perfect such interest. The appellee bank argues that the collateral involved here is a note and security agreement rather than just a note, and that the two documents, considered together, constitute “chattel paper” and the security interest of the bank can be perfected by filing. “Chattel paper” is defined in Mississippi Code Annotated § 75-9-105(b) (1972) as: “a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods, .... ”
After reviewing the cases cited by appel-lee bank on this question, we are not persuaded by those authorities that the Century note and instruments of both parties relating to it constitute chattel paper. J. White & R. Sommers, Handbook of the Law Under the Uniform Commercial Code, § 22.8, at 853 (2d ed. 1980) gives a good discussion of chattel paper:
The most common source of “chattel paper” today is the ordinary secured consumer sale: A dealer sells goods to a customer who signs a note or other promise to pay and agrees that the dealer shall retain a purchase money security interest in the goods to secure the customer’s obligation to pay the price, usually in installments. The resulting writing that the dealer thereby acquires “evidence both a monetary obligation and a security interest in ... specific goods” and constitute chattel paper.
We are of the opinion that the separation agreement executed by Mrs. Crosby and Ira Talmadge Crosby, Jr. on June 9, 1982, and the possession of the Century note (for over one year) by Mrs. Crosby through her attorney perfected her interest in the Century note and that her interest was prior and superior to that of the appel-lee Peoples Bank. In view of our conclusion, it is unnecessary for this Court to discuss subsequent filings and perfection of security interests either by the appellee Peoples Bank or Mrs. Crosby.
The judgment of the lower court is reversed and judgment is rendered here for the appellant Mrs. Betty S. Crosby.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.

. The record does not explain this transaction, although it does reflect that Mrs. Crosby and her attorney held the note at that time under the November 25, 1980, assignment from Crosby Cable, Inc.