# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-IA-01846-SCT

*KELLYE POGUE BARTON*

*v.*

*JON BRADLEY BARTON, ADMINISTRATOR OF THE ESTATE OF WILLIAM JASON BARTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/1999 |
| TRIAL JUDGE: | HON. JAMES S. GORE |
| COURT FROM WHICH APPEALED: | WEBSTER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ELIZABETH F. CROSTHWAIT |
| | TINA M. SCOTT |
| ATTORNEY FOR APPELLEE: | JARRET P. NICHOLS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/19/2001 |
| MOTION FOR REHEARING FILED: | 5/3/2001; denied 7/26/2001 |
| MANDATE ISSUED: | 8/2/2001 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. The sole issue before this Court regards the binding effect of a Separation Agreement filed with a Joint Bill for Divorce. Is a Separation Agreement valid and binding as of its date of execution where the Agreement was executed and filed contemporaneously with a Joint Bill for Divorce on the basis of irreconcilable differences and:

> (A) the Separation Agreement contained express language indicating each party's clear intention that the Agreement be valid and binding from the date of execution; and

> (B) one of the parties to the agreement died prior to the running of the sixty (60) day statutory waiting period required before obtaining a final divorce decree incorporating the Separation Agreement, and

> (C) the surviving party claims that reconciliation occurred due to the parties' resumption of cohabitation?

¶2. On July 1, 1999, Jon Bradley Barton ("Bradley") filed his complaint in the Webster County Chancery Court. Bradley, serving as Administrator of the Estate of William Jason Barton ("Decedent"), asked the court to find the Separation Agreement entered into by Kellye Pogue Barton ("Kellye") and the decedent to be valid and binding on the parties as of the date of execution, and requested that the parties comply with the terms of the Separation Agreement. On July 19, 1999, Kellye filed her motion to Dismiss the Complaint.

¶3. A hearing occurred on August 3, 1999, as a result of Kellye's Motion to Dismiss and the parties were

briefed regarding their respective positions in the matter. On September 7, 1999, an order was entered by the Webster County Chancery Court denying Kellye's Motion to Dismiss and finding the Separation Agreement effective as of the date it was executed. The Webster County Chancery Court later entered an Order Amending Previous Order and Denying Certification for an Interlocutory Appeal. However, this Court granted Kellye Barton's Petition for Interlocutory Appeal pursuant to M.R.A.P.5.

## FACTS

¶4. Kellye Barton and Decedent were married in Webster County, Mississippi, on June 15, 1996. On May 21, 1999, Kellye and Decedent executed a Joint Bill for Divorce based upon irreconcilable differences. At the same time, and in accordance with the requirements for obtaining an irreconcilable differences divorce in Mississippi, Kellye and Decedent executed a Separation Agreement which, with the Joint Bill for Divorce, was filed in the Webster County Chancery Clerk's office. The Separation Agreement, inter alia, contained terms where each party expressly agreed to completely relinquish rights to any claim whatsoever to the other's estate. This Agreement also expressly stated that each party acknowledged his/her intent that the Separation Agreement was valid and binding as of the date of execution, May 21, 1999.

¶5. Thereafter, according to testimony by Kellye, Kellye and Decedent resumed cohabitation in the marital home continuously through June 7, 1999, and then intermittently in the marital home, as well as in Kellye's temporary residence, until Decedent's death on June 21, 1999. Kellye testified that she and Decedent cohabited approximately six times after the filing of the Joint Bill for Divorce and the Separation Agreement. Testimony of witnesses from both parties confirmed that Kellye apparently had spent the night with the Decedent in the marital home and that they had been seen interacting as a couple after the Joint Bill for Divorce and Separation Agreement had been filed. Witnesses for Bradley testified that the Decedent had told them that Kellye was having an affair, that their marriage was over and that Decedent had stated the day he died that he was glad to be getting rid of his wife. The Chancellor determined that the evidence was insufficient to establish that reconciliation had occurred prior to Decedent's death.

¶6. Kellye did not execute a quitclaim deed transferring her interest in the marital home to Decedent prior to Decedent's death as agreed to in the Separation Agreement. Nor was there any withdrawal of the Joint Bill for Divorce prior to Decedent's death.

## DISCUSSION

¶7. The Separation Agreement was executed on May 21, 1999. The Agreement clearly expresses the intentions of the parties to prevent one from asserting a claim against the other's estate and that the agreement be binding as of the date of execution. It states in pertinent part:

> III. Subject to the provisions of this Separation Agreement, each party has released and discharged and by their agreement does for himself and herself, and his heirs or her heirs, legal representatives, executors, administrators and assigns, release and discharge the other of and from all causes of action, claims, rights or demands, whatsoever at law or equity, which either of the parties ever had or now has against the other, except for any and all cause or causes of action for divorce.
>
> (9) The parties do hereby expressly revoke and cancel any provision, if any, in their respective wills, if any, or any other deed, contract or document that is in conflict with the terms and provisions hereof and each of the parties do hereby covenant with the other to totally refrain from asserting any claim

against the estate of the other that is inconsistent with the terms and provisions of this agreement.

(10) This agreement shall be binding upon the heirs and legal representatives of the parties from and after the date hereof.

¶8. This Court has previously considered the validity of a separation agreement in a case substantially similar to the one at hand. *Roberts v. Roberts*, 381 So.2d 1333 (Miss. 1980), dealt with a husband and wife who had executed a joint bill for divorce based upon irreconcilable differences and also executed a property settlement agreement. Less than forty-eight (48) hours after the execution of such documents the husband was killed in an automobile accident. Subsequently, the siblings of the decedent filed a petition asking the chancery court to adjudicate and determine the rights of inheritance regarding the estate of the decedent. After reviewing the language in the property settlement agreement, this Court determined that the wife had surrendered her rights to the estate. This Court stated in *Roberts*:

> The rules applicable to the construction of written contracts in general are to be applied in construing a postnuptial agreement. Such a contract must be considered as a whole, and from such examination the intent of the parties must be gathered. Such construction should be given the agreement, if possible, as will render all its clauses harmonious, so as to carry into effect the actual purpose and intent of the parties as derived therefrom....

> The rule is, as to a postnuptial agreement, that only such rights in the estate of the deceased spouse are barred as are expressly enumerated or reasonably inferable from the language employed therein....

> We have carefully considered the separation and property settlement agreement entered into between the Roberts and are of the opinion that the provisions of that agreement, which we have discussed above, clearly manifests to us the parties intention to waive each other's right to inherit from the other, if either should die prior to a divorce being obtained.

*Id.* at 1335.

¶9. In *Roberts*, this Court determined that the agreement was enforceable despite there being less than forty-eight (48) hours between the time of its execution and the husband's death. In the present case, thirty (30) days passed without either party withdrawing the Joint Bill for Divorce. Kellye chose to withdraw the joint bill by filing an Affidavit For Withdrawal Of Joint Bill For Divorce in the Chancery Court of Webster County after Decedent had perished in the automobile accident.

¶10. Additional case law establishes that property settlement agreements are contractual in nature and are not subject to modification or contingent upon a final divorce decree. This Court, in *Stone v. Stone*, 385 So.2d 610 (Miss. 1980), stated:

> The property settlement entered into between the parties was not made subject to the approval of the chancery court; therefore, all of the provisions of the agreement except those pertaining to support of the wife, child support and custody retained a purely contractual nature. The provisions of the agreement pertaining to support of the wife and children and custody of the children were subject to modification by the chancery court in the divorce action, but the provisions pertaining to the conveyance and use of the land, the occupancy of the residence house by the wife, the duty of the husband to maintain the real property and the assignment of life insurance policies were permissible subjects of a contractual agreement.

*Id.* at 612. In ***Stone***, this Court noted the difference between child support, child custody, support of the wife, and provisions dealing with property. While support and custody matters are clearly subject to modification and approval by the court after the sixty (60) day mandatory waiting period, such a period does not exist for agreements dealing with property.

¶11. This Court, in ***Crosby v. People's Bank***, 472 So.2d 951 (Miss. 1985), discussed the validity of separation agreements at the time of their execution:

> Although a divorce action was filed by the Crosby's on June 9, 1982, along with the settlement agreement, we are of the opinion that the agreement was binding and effective upon the parties even though a divorce action, subsequently, may never have been filed or a decree of divorce entered. The parties could have lived separate and apart for the rest of their lives and the instrument would have been binding upon them. The instrument constituted a valid, enforceable contract at the time of its execution and delivery on June 9, 1982.
>
> Appellee takes the position that the separation agreement was not valid and enforceable until a divorce was granted because of Mississippi Code Annotated § 93-5-2 (Supp.1982), referred to as the "No-Fault Statute" which follows:
>
> No divorce shall be granted on the ground of irreconcilable differences unless the Court shall find in its decree that the parties have made adequate and sufficient provision by written agreement for custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties.
>
> Under the statute, although a no-fault divorce may not be granted without the parties having made provisions by written agreement for custody and maintenance of children and for settlement of property rights between the parties, it does not delay the effective date of a separation agreement until a no-fault divorce is granted.

*Id.* at 955.

¶12. This Court, in ***East v. East***, 493 So.2d 927 (Miss. 1986), stated further:

> We have also historically recognized that parties may upon dissolution of their marriage have a property settlement incorporated in the divorce decree, and such property settlement is not subject to modification. A true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.

*Id.* at 931-32.

¶13. Kellye relies upon ***Pittman v. Pittman***, 375 So.2d 415 (Miss. 1979), in asserting that the death of one of the parties to a purely divorce action cancels the divorce proceeding. The Court in ***Pittman*** stated:

> The authorities are clear that the death of complainant in the divorce action prior to the execution and entry of the final decree by the lower court ended the marriage of the parties and canceled fully the bill of complaint for divorce and incidental property relief.

*Id.* at 416. It is not disputed that at the time of the Decedent's death that Kellye was still his wife. The law regarding the death of one of the parties in a divorce action, as set out in *Pittman*, is still valid. However, this case revolves around the execution and validity of a Property Settlement Agreement, a topic *Pittman* does not address.

¶14. Kellye also relies upon *Grier v. Grier*, 616 So. 2d 337 (Miss. 1993), where this Court held that a separation agreement executed in conjunction with a joint bill for divorce based upon irreconcilable differences could not be held valid when the joint bill had been voided by one of the parties. In *Grier* a husband and wife had filed a joint bill for divorce based on irreconcilable differences and executed a property settlement agreement. Prior to obtaining a final divorce decree, one party withdrew from the proceedings to pursue a divorce based on another ground. The Court determined that the property settlement agreement was unenforceable and stated:

> Today we hold that a property settlement agreement executed in contemplation of a divorce based upon irreconcilable differences is unenforceable when one party withdraws from the irreconcilable differences proceeding and seeks a divorce on grounds other than irreconcilable differences. Much confusion may be avoided by inserting appropriate language within the property settlement agreement which specifically addresses this contingency.

> It is not our intent to limit the parties' rights to contract.

*Id.* at 341. The Court in *Grier* felt it improper for the parties to be bound by a property settlement agreement made for the purpose of garnering a no fault divorce when such a type of divorce was no longer being sought. No such change occurred in the instant case, as neither party ever attempted to change the grounds under which they were pursuing the divorce.

¶15. Finally, Kellye contends that she and Decedent had resumed marital relations, which, would serve to void the Separation Agreement. Kellye points to *Gardner v. Gardner*, 234 Miss. 72, 105 So.2d 453, 455 (1958), where the Court determined that a separation agreement was not valid or binding upon the parties because they had "cohabited together as man and wife." The Court continued by stating:

> It appears to be well settled that reconciliation of husband and wife and resumption of marital relations for any period of time will render a previous contract and settlement of property rights void and that in the absence of divorce a separation contract between husband and wife is abrogation of the marital relation.

*Id.* at 79, 105 So.2d at 455.

¶16. At trial, Kellye's contention that the couple was attempting reconciliation was determined by the Chancellor to be unproven. Testimony was offered by both parties regarding the couple's conduct after the execution of the Separation Agreement. Thereafter, according to testimony by Kellye, Kellye and Decedent resumed cohabitation in the marital home continuously through June 7, 1999, and then intermittently in the marital home, as well as in Kellye's temporary residence, until Decedent's death on June 21, 1999. Kellye testified that she and Decedent cohabited approximately six times after the filing of the Joint Bill for Divorce and the Separation Agreement. Testimony of witnesses from both parties confirmed that Kellye apparently had spent the night with Decedent in the marital home and that both had been seen interacting as a couple after the Joint Bill for Divorce and Separation Agreement had been filed. Witnesses for Bradley testified

that Decedent had told them that Kellye was having an affair, that their marriage was over and that Decedent had stated the day he died that he was glad to be getting rid of his wife. The Chancellor determined that the evidence was insufficient to establish that reconciliation had occurred prior to Decedent's death. The Chancellor stated:

> This Court is of the opinion that the evidence is insufficient to establish that, through their actions, the Decedent and Kellye had reconciled their differences and, therefore, finds that there had been no reconciliation at the time of Decedent's death.

The Chancellor further stated:

> [t]his Court finds that death of one of the parties to a postnuptial agreement entered into in contemplation of an irreconcilable differences divorce is not analogous to a reconciliation of the parties during their lifetimes. Neither is it analogous to a situation in which, for some reason, the irreconcilable differences divorce proceedings fails and a party seeks a divorce on other grounds as was the case in *Grier v. Grier*, 616 So.2d 337 (Miss. 1993). In *Grier* the Court held that the intent of Section 93-5-2, Mississippi Code Annotated, is to provide a less painful alternative to the traditional grounds for divorce which require the parties to publicly put on proof of sensitive private matters. That the foundation of the bargain between the parties to an irreconcilable differences divorce proceeding is avoiding the necessity of presenting proof at trial. The Court went on to state that it would be fundamentally unfair to hold either of the parties to the terms of a postnuptial agreement after the foundation of the bargain is removed by one of the parties filing a separate and distinct complaint on adultery. That the filing of a second complaint, inconsistent with the first complaint grounded on irreconcilable differences, was an effective withdrawal from and objection to the first complaint. In the case sub judice the Respondent, through the death of her husband, has become a single person without having to experience such discomfort and embarrassment. She did not lose "the foundation of her bargain" under the Separation Agreement.

> This Court concludes in this case that the death of the Decedent did not, ipso facto, abrogate the Separation Agreement. Therefore, in determining whether this Agreement is now binding and effective upon the Wife, this Court must look to the wording of the contract as a whole and thereby determine the intent of the parties. Roberts v. Roberts, 381 So.2d 1333 (Miss. 1980).

¶17. This Court has stated that it "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Cummings v. Benderman*, 681 So.2d 97, 100 (Miss.1996). "Under the standard of review utilized to review a chancery court's findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the court on appeal unless its findings were manifestly wrong." *Mizell v. Mizell*, 708 So.2d 55 (Miss.1998) (quoting *Tilley v. Tilley*, 610 So.2d 348, 351 (Miss.1992)). The chancellor did not abuse his discretion, make a determination that was manifestly wrong or clearly erroneous, or apply an erroneous legal standard in this case when he concluded that the evidence presented was insufficient to establish that, through their actions, Decedent and Kellye had reconciled their differences and found that there had been no reconciliation at the time of Decedent's death.

¶18. We conclude that the Separation Agreement signed by both parties was valid and binding as of the date of its execution and was not voided by the untimely death of Decedent or by any supposed

reconciliation of the parties. Consequently, Mrs. Kellye Barton is precluded by the Separation Agreement from inheriting the estate of the deceased.

## CONCLUSION

¶19. Based on the foregoing analysis, we affirm the decision of the Webster County Chancery Court.

¶20. **AFFIRMED.**

**SMITH, WALLER, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J., AND MILLS, J. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND McRAE, P.JJ., AND MILLS, J.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶21. The majority chooses to hold binding a separation agreement that was entered into in anticipation of the court granting a divorce. Because the divorce was never granted and because the agreement specifically states that it was to be subject to the approval of the court, the agreement should not be enforceable, as there was a lack of consideration for the agreement to be binding. Furthermore, the irreconcilable differences statute requires a finding by the court that the provisions of a property settlement are "adequate and sufficient." Miss. Code Ann. § 93-5-2(2) (1994). Accordingly, I dissent.

¶22. The Court correctly characterizes the separation agreement as a contract between two spouses. However, this contract was predicated on the occurrence of a condition subsequent to its formation, that being a divorce. The contract was executed in conjunction with a petition for divorce based on the ground of irreconcilable differences. In it the Bartons asked the court to ratify its terms and stated that "all matters and things are agreed upon, <u>subject to the approval of this Honorable Court</u>." Both the contract itself and Miss. Code Ann. § 93-5-2 (2) require the court's approval before the separation agreement could become binding.

¶23. Due to the death of William Jason Barton approximately half-way through the sixty-day mandatory waiting period prescribed by the statute, the Bartons were never divorced. As a result there was no consideration, and the court never approved of the provisions in the separation agreement.

¶24. The majority cites several cases to support its position. However, its reliance on these cases is misplaced, as they all involved agreements that were not entered into in anticipation of divorce and not made subject to approval of the court. In *Stone v. Stone*, 385 So.2d 610, 611 (Miss. 1980), this Court enforced a division of property agreement between spouses. That agreement, unlike the one before us, was not made subject to court approval. At the time of contracting, the Stones were not seeking a divorce. In fact, they did not seek a divorce until approximately four years after entering the contract. We also enforced an agreement between spouses in *Roberts v. Roberts*, 381 So.2d 1333, 1334 (Miss. 1980), where its terms stated that it "is not contingent upon either party procuring a divorce."

¶25. In a typical divorce based on irreconcilable differences, the promise to get a divorce is the mutual

consideration for the property settlement agreement. The divorce itself is a condition, the fulfilment of which is necessary before the contract may be enforced. The majority errs in relying on cases where the division of property agreement was made independently of a divorce proceeding.

¶26. In *Crosby v. People's Bank*, 472 So.2d 951, 954 (Miss. 1985), the terms of the agreement indicated that it was to be incorporated into any divorce proceeding that followed. In enforcing it, this Court noted that the Crosbys intended the contract to stand on its own, independent of a divorce proceeding. "The parties could have lived separate and apart for the rest of their lives and the instrument would have been binding upon them." *Id.*

¶27. This intent to be bound regardless of marital status was also present in *East v. East*, 493 So.2d 927, 930 (Miss. 1986). In *East*, the contract was entered into in conjunction with divorce proceedings. However, it stated that it "shall not be invalidated upon reconciliation," which shows the parties' intent to be bound by the agreement regardless of whether a divorce was ultimately granted.

¶28. We recognized this principle in *Grier v. Grier*, 616 So.2d 337 (Miss. 1993), where the parties had executed a property settlement in conjunction with a petition for divorce based on irreconcilable differences. The Griers later pursued a fault-based divorce, and we held the property agreement to be unenforceable.

> It would be fundamentally unfair to hold either of the parties to portions of the package after the foundation of the bargain is removed. For the foregoing reason, our prior cases have held that such agreements do not have force of law unless and until they are approved by the chancellor.

*Id.* at 339-40 (emphasis added).

¶29. The majority attempts to distinguish *Pittman v. Pittman*, 375 So.2d 415 (Miss. 1979), by noting that the Pittmans did not execute a property settlement. This Court held in *Pittman* that the death of a party to a divorce action "cancelled fully the bill of complaint for divorce and incidental property relief." *Id.* William Jason Barton's death cancelled the Bartons' petition for divorce and, with it, the property agreement settlement.

¶30. Furthermore, because they were legally married at the time of William's death, Kellye Barton would be the sole beneficiary of any wrongful death lawsuit brought as a result of his death, if such a lawsuit were appropriate. Miss. Code Ann. § 11-7-13 (Supp. 2000) grants priority in wrongful death actions to the spouse of the decedent, if the couple has no children. *See Campbell v. C & H Transp. Co.*, 411 So.2d 1284 (Miss. 1982) (holding that sister could not seek wrongful death damages where estranged husband was sole party in interest and had prosecuted a like cause of action in another jurisdiction).

¶31. The property settlement agreement at issue was conditioned on the confirmation of the Bartons' pending divorce and was not binding until it was approved by the chancery court and a divorce granted. Because William died before the divorce could be granted, this condition was not met. The property separation agreement should therefore be rendered unenforceable. Accordingly, I dissent.

**BANKS, P.J., AND MILLS, J., JOIN THIS OPINION.**

**COBB, JUSTICE, DISSENTING:**

¶32. I must respectfully dissent. The precise issue in this case is whether a Separation Agreement filed in

conjunction with a Joint Bill of Divorce can be effective without court approval when there is ultimately no divorce due to the death of one of the spouses. The unique facts of this case make this a case of first impression for this Court. Nevertheless, the proper result is clear in light of the governing statute and the unequivocal stand this Court has taken in the area of public policy.

¶33. The Separation Agreement was executed and filed simultaneously with the Bartons' Joint Bill of Divorce which was filed in compliance with Mississippi law governing irreconcilable differences divorces, Miss. Code Ann. § 93-5-2 (1994). The statute requires a sixty-day waiting period before the divorce can be final. Under this statute, the spouses may reach agreements, such as the separation agreement in this case, and provide those to the Court as follows:

> If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.

*Id.* § 93-5-2(2). This Court has discussed the enforceability of such agreements that are part of a filing for divorce under this statute:

> The statute's intent is to provide a less painful alternative to the traditional grounds for divorce which required the parties to publicly put on proof of sensitive private matters. Instead, under § 93-5-2, where the parties are agreeable, they may forego the aforementioned discomfort. The statute contemplates the simple filing of a complaint and various agreements as a "package deal." The cornerstone of the process is mutual consent. The parties bargain on the premise that reaching an agreement will avoid the necessity of presenting proof at trial. It would be fundamentally unfair to hold either of the parties to portions of the package after the foundation of the bargain is removed. For the foregoing reason, our prior cases have held that such agreements do not have force of law unless and until they are approved by the chancellor.

*Grier v. Grier*, 616 So. 2d 337, 339-40 (Miss. 1993). In other words, the divorce is part of the consideration for the agreement. This Court has held that the death of one of the parties to a divorce action cancels the divorce proceeding. *Pittman v. Pittman*, 375 So. 2d 415, 416 (Miss. 1979). Consequently, where there is no divorce, any agreement filed as part of a "package deal" fails for lack of consideration.

¶34. The majority's reliance on *Roberts v. Roberts*, 381 So. 2d 1333 (Miss. 1980) is misplaced. This Court's holding in *Roberts* was based upon the express language of the agreement. "This agreement is not entered into for the purpose of procuring a divorce between the parties and is not contingent upon either party procuring a divorce from the other." *Id.* at 1334. There was no such express provision in the Bartons' agreement.

¶35. Likewise, such express language was included in the agreement in *Crosby v. People's Bank*, 472 So. 2d 951, 954 (Miss. 1985). The language quoted by the majority actually supports Kellye because it demonstrates the intention of the parties in *Crosby* to be bound by their agreement whether or not a divorce ever occurred. The language of the agreement in *East v. East,* 493 So.2d 927 (Miss. 1986), reflected the same intention to be bound by the agreement regardless. 493 So. 2d 927 (Miss. 1986). Without the type of express language contained in *Roberts*, *Crosby* and *East*, the Bartons' agreement (as part of a "package deal") is not enforceable under Mississippi statutory law until approval by the chancellor.

¶36. Moreover, paragraph VI of the Bartons' Joint Bill for Divorce expressly provides that the Separation Agreement is contingent upon the approval of the chancellor.

> The parties would show that all matters concerning real and personal property, and other matters have been agreed upon by the parties as set forth in the Separation Agreement dated May 21, 1999 . . . and to be considered a part hereof as if fully copied herein in words and figures. They pray that this said agreement and the provisions contained therein be ratified by this [h]onorable [c]ourt and be incorporated into a new decree entered in this cause. That there are no other matters to be disposed of by the parties; that all matters and things are agreed upon, subject to the approval of this [h]onorable [c]ourt.

However, even without such express language, in divorces based upon irreconcilable differences, the property settlement must be reviewed by the court to determine whether the agreement is equitable. Miss. Code Ann. § 93-5-2(2) (1994).

¶37. The majority also cites *Stone v. Stone*, 385 So. 2d 610 (Miss. 1980). However, the agreement at issue in *Stone* was executed more than three years prior to the filing for divorce. In addition, the divorce was not an irreconcilable differences divorce. Moreover, the statute authorizing irreconcilable differences divorces was not even enacted until several years after the divorce in *Stone*. Thus, the language of *Stone* cited by the majority is not controlling.

¶38. The well-established public policy of this State and this Court also mandates a finding that a separation agreement filed in conjunction with an irreconcilable differences divorce should not be binding when there is no divorce. To hold otherwise would be to effectively recognize the concept of legal separation, a concept that has never been recognized by the Mississippi Legislature or this Court. *See* **Godwin v. Godwin**, 758 So. 2d 384, 386 (Miss. 1999).

¶39. Additionally, public policy demands this Court uphold the spirit, and not just the letter, of the law concerning irreconcilable differences divorce. The sixty-day waiting period is meant to be a time for the parties to reconcile if that is possible. To hold that separation agreements are enforceable without the approval of the chancellor or the final decree of divorce would be to undermine the clear purpose of the waiting period by reducing the ease of and incentive for reconciliation. Accordingly, the chancellor's decision should be reversed.

**BANKS AND McRAE, P.JJ., AND MILLS, J., JOIN THIS OPINION.**