RANDOLPH, Justice,
dissenting:
¶ 38. Justice Lamar has astutely honed in upon the controlling, nearly two-century-old holding of this Court in Gerault v. Anderson, 1 Miss. 30, 1818 WL 456 (June Term 1818), that “on the death of [a] party his interest ceases, and the jurisdiction of the court ceases also.” Id. at *2. See also Owen v. Abraham, 233 Miss. 558, 561, 102 So.2d 372, 373 (1958) (quoting Griffith’s Mississippi Chancery Practice, Section 591) (the “impossibility of’ litigation “carried on by or against any deceased person!,]” is “apparent ... upon its mere mention”). Application of that principle in a divorce-revocation context aligns with the logical and well-reasoned decisions by the courts of our sister states. See Dune-vant v. Dunevant, 142 N.CApp. 169, 175, 542 S.E.2d 242, 246 (2001) (“the trial court may not set aside a valid divorce decree and thereby revive the marital status of a party who is deceased.”); Hill v. Lyons, 550 So.2d 1004, 1006 (Ala.Civ.App.1989) (following the death of one party, “upon timely motion the trial court had jurisdiction to amend, alter, or modify the [divorce] decreet,]” insofar as it “affected property rights of the parties [10].... The trial court did not, however, have the jurisdiction to change the adjudged marital status of the parties.”) (emphasis added); Cox v. Dodd, 242 Ala. 37, 41, 4 So.2d 736, 739 (1941) (quoting 17 Am.Jur. § 462, p. 378) (when a divorce judgment does not affect property rights, “[p]roceedings to vacate it will not lie after the death of one of the parties. The only object which could, be attained would be sentimental in its nature, for the death of the 'parties effectually severs the marriage relation *1262 and the practical result of the judgment or decree would not be affected. On the other hand, where the judgment or decree affects property rights, the death of one party or both parties does not affect the right of the unsuccessful party or his or her representative to institute vacation proceedings. This is permitted, not for the purpose of continuing the controversy touching the right to a divorce itself, but for the ascertainment of whether the property has been rightly diverted from its appropriate channel of devolution.”) (Emphasis added.)
¶ 39. In spite of Gerault and the above persuasive authority, a majority of our Justices opt to judicially engraft into the “at any time” language of Mississippi Code Section 93-5-31 the permissibility of a divorce revocation “even after the death of one of the parties.” (Maj. Op. at ¶¶ 27-28) (citing Miss.Code Ann. § 93-5-31 (Rev. 2004)). “The privilege to amend a statute, not constitutionally infirm, does not rest with this Court.” Miss. Ethics Comm’n v. Grisham, 957 So.2d 997, 1003 (Miss.2007). As the statute makes no reference regarding the death of a coapplicant before decree or judgment, this Court has no authority to engraft such upon it. If the Legislature so desires, a statutory amendment to that effect (assuming the constitutionality thereof) is permissible. But that amendment does not lie within the province of this Court. For now, “on the death of [a] party his interest ceases, and the jurisdiction of the court ceases also.” Ger-ault, 1818 WL 456 at *2. Ita lex scripta est.[11]
¶ 40. The lack of prudence in the Majority’s approach becomes apparent when considering statutes pertaining to divorce and marriage. Mississippi Code Section 93-5-2 provides, in pertinent part, that:
(1) Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, but only upon the joint complaint of the husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process.
[[Image here]]
(4) Complaints for divorce on the ground of irreconcilable differences must have been on file for sixty (60) days before being heard. Except as otherwise provided in subsection (3) of this section, a joint complaint of husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process, for divorce solely on the ground of irreconcilable differences, shall be taken as proved and a final judgment entered thereon, as in other cases and without proof or testimony in termtime or vacation ....
Miss.Code Ann. § 93-5-2 (Rev.2004) (emphasis added). This statute likewise makes no reference to the death of one of the parties following the filing of a joint complaint (evidencing intent to divorce), but prior to the hearing and/or final judgment. Yet this Court has held that “[t]he authorities are clear that the death of complainant in the divorce action prior to the execution and entry of the final decree by the lower court ended the marriage of the parties and canceled fully the bill of complaint for divorce and incidental property relief.” Barton v. Barton, 790 So.2d 169, 173 (Miss.2001) (quoting Pittman v. Pittman, 375 So.2d 415, 416 (Miss.1979)) (emphasis added). It is no different on appeal. See Howard v. Howard, 243 Miss. 68, 71, 137 So.2d 191, 192 (1962) (“the death of either party pending an appeal *1263 from a judgment in a divorce action abates the action insofar as it affects the mere marital status....”). No authority exists for the proposition that this statute and the relief sought should be different.
¶ 41. But even if one would argue that divorce is distinguishable because death effectively accomplishes the chief purpose for such an action by dissolving the marriage status, consider the effect of the death of one of the parties while attempting to establish marriage status. A marriage is invalid:
unless the contracting parties shall have obtained a mamage license as otherwise required by law, and unless also the mamage, after such license shall have been duly issued therefor, shall have been performed by or before any person, religious society, institution, or organization authorized by sections 93-1-17 and 93-1-19 to solemnize marriages. Failure in any case to comply with both prerequisites aforesaid, which shall be construed as mandatory and not merely directory, shall render the purported marriage absolutely void.
Miss.Code Ann. § 93-1-15(1) (Rev.2004) (emphasis added). This statute makes no reference to the death of one of the parties following the lawful acquisition of a marriage license (evidencing intent to marry), but prior to solemnization of the marriage. Applying the Majority’s reasoning, the absurd result of a marriage being solemnized despite the death of one prospective spouse extends beyond the realm of legal permissibility.
1142. Gerault is sound because of its bright-line holding, i.e., jurisdiction over an individual ceases at death. See Gerault, 1818 WL 456 at *2. The Majority argues that Gerault is inapplicable because it involved an in personam action, while the present matter “is one touching upon the marital status of the parties and is an in rem action....” (Maj. Op. at ¶27) (citing Gerault, 1818 WL 456 at *2). Assuming arguendo that the adjudication of marital status and custody are in rem actions for which “one spouse may obtain a divorce without personal service of process on the other[,]”[12] (Maj. Op. at ¶ 25), the pretension that a distinction should be accorded in rem versus in personam disappears when considering the effect of a necessary party’s death in divorce and child-custody actions. This Court has clearly spoken to the divorce context. See ¶ 40 supra (citing Barton, 790 So.2d at 173 (quoting Pittman, 375 So.2d at 416); Howard, 137 So.2d at 192). Similarly, does the Majority take the untenable position that because a child-custody action is in rem, a court has authority to award the custody of a child to a dead person? Surely not. Consistent with Gerault, when a necessary party to a divorce, divorce revocation, or child-custody action dies, the trial court’s authority to alter either the marriage status or child custody ceases. The application of Ger-ault in such circumstances is eminently correct, and the in rem/in personam distinction is of no import.
¶ 43. The Majority opinion casts aside Gerault’s compelling logic and longstanding vintage, and instead substitutes what amounts to a precarious “intent” standard. In cases involving the death of a necessary party, applying this same “intent” standard to its logical extreme would sanction divorces prior to a final decree because the parties’ “intent” was expressed in the joint complaint, and marriages prior to solemnization because of the parties’ “intent” expressed in acquisition of a marriage li *1264 cense. Under the Majority’s approach, should we not begin accepting unsigned wills because the decedent has shown his “intent” to direct the disposition of property? Applying the Majority’s interpretation of Section 93-5-31, if both persons execute a joint application and one dies, albeit before it is filed,[13] sufficient “intent”[14] is shown for the revocation of a divorce as long as it is confirmed by the surviving applicant, who effectively gets to present irrefutable evidence because dead persons can neither speak nor change their mind prior to trial.[15] Such an approach is legally erroneous and practically untenable, a legal folly.
¶ 44. This decision can have far-reaching, ill consequences on interrelated areas of law. For example, the law of descent and distribution provides that “[a]ll personal property situated in this state shall descend and be distributed according to the laws of this state regulating the descent and distribution of such property.... The widow of such deceased person shall take her share in the personal estate according to the laws of this state.” Miss. Code Ann. § 91-1-1 (Rev.2004). In the absence of a will, if a divorce may be revoked despite the prejudgment death of one of the parties, then the “widow of such deceased person,” otherwise unrecognized, gains significant property rights. See Miss.Code Ann. §§ 91-1-7 (“[i]f a husband die intestate and do not leave children or descendants of children, his widow shall be entitled to his entire estate, real and personal, in fee simple, after payment of his debts; but where the deceased husband shall leave a child or children by that or a former marriage, or descendants of such child or children, his widow shall have a child’s part of his estate, in either case in fee simple.”); 91-1-11 (“[w]hen any person shall die possessed of goods and chattels or personal estate not bequeathed, the same shall descend to and be distributed among his or her heirs in the same manner that real estate not devised descends.”) (Rev.2004). Under the Majority’s approach, these substantial property rights are acquired nunc pro tunc based upon an unconsummated “intent” to revoke the divorce,[16] despite the irrefutable fact that at the time of death, the parties were divorced.
¶ 45. Upon his death, Charles’s “time” expired. The trial court was correct in initially quashing the joint application to revoke the divorce based upon Charles’s death, but erred in subsequently “enter-tainting] a motion to reconsider this finding should [Janet] timely file such a request and show sufficient facts evidencing a satisfactory reconciliation of the parties.” For all of the above reasons, I join Justice Lamar’s dissent, which declares that “a trial court is without authority to alter the marital status of a party who is deceased.” (Dis. Op. at ¶ 47). I likewise dissent.
WALLER, C.J., and LAMAR, J., join this opinion.

. But according to Janet, addressing substitution under Mississippi Rule of Civil Procedure 25:
Ltjhe case at bar is not an adversarial action in its genesis; it is not an action to recover money or to enforce a contract, a debt, land rights, etc. In such adversarial actions, a substituted party can potentially recover or provide the relief sought in the suit. However, in the case at bar, a substituted party cannot provide the relief sought by [Janet], i.e. marriage. She cannot be married to an estate and certainly does not want to be married to another person substituted in place of [Charles],
(Emphasis added). Thus, even Janet acknowledges that only one of the two necessary parties remains alive, and the deceased party cannot be substituted.

. "So the law is written.” Black’s Law Dictionary 966 (4th ed. 1968).

. However, our irreconcilable-differences divorce statute requires "the joint complaint of the husband and wife or a complaint where the defendant has been personally served with process...." See Miss.Code Ann. § 93-5-2(1) (Rev.2004).

. There is no mention of a filing requirement in Section 93-5-31. See Miss.Code Ann. § 93-5-31 (Rev.2004).

. In the event that the court also finds “satisfactory evidence of their reconciliation.” Miss.Code Ann. § 93-5-31 (Rev.2004).

. Carlisle’s testimony that he previously had prepared four or five revocation applications for Charles, each of which Charles disposed of, clearly evinces that any “intent” inferred from the application is tenuous.

.Similarly, the Majority’s approach would allow the surviving party to claim Social Security benefits as a widow, and partake of other tax advantages reserved for the spouse of a deceased, despite the undisputed fact that the parlies were divorced at the time of death.