# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-02047-SCT

*ARTHUR D. CARLISLE, ADMINISTRATOR OF*
*THE ESTATE OF CHARLES E. ALLEN, III,*
*DECEASED*

*v.*

*JANET ELLEN DAVIS ALLEN*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/19/2007 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL J. VALLETTE |
| ATTORNEYS FOR APPELLEE: | JOSEPH EDGAR FILLINGANE CAROL ANN ESTES BUSTIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND RENDERED. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS REINSTATED AND AFFIRMED - 07/29/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     A divorced couple, Charles Allen and Janet Allen, filed a petition to revoke their divorce. While the petition was pending, Charles died. The chancellor initially quashed the motion. On rehearing, the chancellor found that Janet had produced sufficient evidence of reconciliation and entered an order revoking the divorce. Arthur Carlisle, the administrator

of Charles's estate, appealed on his behalf. The Court of Appeals – finding cases in which a party to a pending divorce died prior to a final entry of divorce to be analogous – held that the chancery court did not have jurisdiction to hold an evidentiary hearing, and reversed and rendered the matter. Janet filed a petition for writ of certiorari, which this Court granted.

**FACTS**

¶2. Charles and Janet Allen were married on November 24, 1996, and divorced on September 23, 2002, in the Chancery Court of Pearl River County. The couple had no children during their marriage. On May 17, 2006, Janet and Charles filed a Joint Application to Revoke Judgment of Divorce, which was properly signed by both parties, in the chancery clerk's office of Pearl River County. This application was prepared by Arthur D. Carlisle. The parties took no further action on the petition, and Charles died on June 16, 2006, prior to any evidence of reconciliation being presented to the trial court.

¶3. The trial court quashed the application to set aside the divorce nearly one year after Charles's death. The trial court's order stated that it would allow Janet to file a timely request for reconsideration, if she could show sufficient facts of a satisfactory reconciliation. Carlisle represented Charles's estate as its administrator.

¶4. Janet filed for reconsideration and testified to the following facts regarding her reconciliation with Charles: the two had maintained their relationship after the divorce; Charles and Janet had continued to talk and go out together; Charles had a private telephone line put in Janet's house so he could call her; the two had spent every weekend together from March 2006 until Charles's death in June 2006; Charles had called her multiple times a day while she was recovering from a hip injury she incurred following Hurricane Katrina;

2

Charles had plans to sell his house and move back into the former marital home with Janet; and the couple had opened a joint banking account.

¶5.    Janet also testified that the reason the couple initially had divorced was that Janet had become sick during the marriage and Janet's mother, Mary Davis, had encouraged her to get divorced.   Janet testified that Charles did not come into the courtroom the day they were divorced.  Regarding their relationship after the divorce, Janet stated, "we were always close. It was like we were never really divorced."   Once they filed the petition to revoke the divorce, the couple both began wearing their wedding rings.

¶6.    On cross-examination, Janet testified that Charles had paid the bills at his house, and – other than the bill for the phone line Charles had placed in Janet's home – Davis had paid the bills at her house.  After Charles's death, his body was found at his home by his housekeeper, Beverly Slaydon.  Janet was at her home and was informed of his death by Slaydon.

¶7.    Davis testified that the coroner sent Charles's personal effects to Davis.  She said she supposed the coroner did this because of her daughter's relationship with Charles.

¶8.    Slaydon testified that she had met Janet while working for Charles in his home. Slaydon testified that she often had talked to Janet on the phone, but Charles would not give her Janet's phone number because it was "just for him and [Janet]." She testified that Charles was on the phone with Janet constantly, that Janet regularly had spent weekends at Charles's house, and Charles and Janet would hold hands, talk, and laugh. In her opinion, Charles and Janet loved each other very much.  Finally, Slaydon testified that the only other woman she ever saw at Charles's home was Janet's personal care provider, Patricia Beard.

3

¶9.     Beard cared for Janet as she recovered from a hip injury and, during that time, drove Charles and Janet to Poplarville to file the petition to revoke their divorce.  She saw Charles sign the joint application and take it to the courthouse.  She testified to seeing Charles three to four times per week, and said that Charles would bring Janet lunch, flowers, or presents.  She stated that Charles and Janet would spend hours together on the phone. In her opinion, Charles and Janet had a very loving and affectionate relationship.  It was her understanding that the couple had wanted to have their divorce revoked and that Charles had planned to return to the marital home.  She stated, "[Charles] never felt that they were divorced.  He wanted to be with her.  He told me that she was his life partner."  Finally, Beard testified that Charles had asked her to find his wedding band, and she had seen him wearing it.

¶10.    Carlisle testified that he was a close friend of Charles's, and he had known him since 1969.  He stated that he had prepared the application to revoke the divorce, but that it was his understanding that Charles "never intended to marry [Janet] or set aside the divorce." He further testified that he previously had prepared four or five applications to revoke the divorce for Charles, but Charles had thrown those applications away.  Carlisle thought Charles felt cheated out of the marital home in the divorce, and was using the revocation of divorce to "recover what he thought was rightfully his."

¶11.    Carlisle further testified that he regularly had visited Charles and that he never had noticed signs of anyone staying with him.  When he visited Janet after Charles's death, Carlisle said the first thing Janet told him was that she was not going to pay for the funeral arrangements.  As a result, he made a number of the funeral arrangements personally. However, Janet testified that Carlisle volunteered to make the funeral arrangements and

4

refused to allow her to pay for the service. Finally, Carlisle testified that Charles had a personal relationship with a female attorney before and after Hurricane Katrina. While he did not know the woman's name, it was someone other than Janet.

### RULING IN THE CHANCERY COURT

¶12. Carlisle filed a motion to quash the application to revoke the divorce. The chancery court subsequently entered an order quashing the application on June 11, 2007. The trial court reasoned that "no hearing or other evidence of the reconciliation was presented prior to the death of Charles E. Allen, III," and found that the motion therefore should be quashed. However, the order specified that the chancery court would "entertain a motion to reconsider this finding should the co-applicant timely file such a request and show sufficient facts evidencing a satisfactory reconciliation of the parties."

¶13. Janet filed a motion for reconsideration eleven days later, on June 22, 2007. Carlisle subsequently filed a motion to strike Janet's motion for reconsideration, arguing that it was untimely and that Janet had failed in the motion to show sufficient facts evidencing a reconciliation. The chancery court held a hearing on the matter, in which both Janet and Charles's estate presented testimony regarding the couple's reconciliation, as described above. The chancellor entered his order on October 24, 2007, finding jurisdiction proper and granting the revocation of divorce.

¶14. The chancery court also found evidence of intent to revive the marriage in that Charles and Janet had jointly filed the petition. Further evidence which supported an intention to revive the marriage noted by the chancellor included: Charles and Janet often had stayed with one another, went out together, talked frequently, and had opened a joint bank account in

5

their names. The chancellor dismissed the claim that the petition to revoke the divorce was an attempt by Charles to acquire title to the marital home.

¶15. Carlisle timely appealed on behalf of Charles's estate, raising several issues. Those issues can be fairly summarized as follows:

I.  Whether the chancery court had jurisdiction after the death of Charles.

II.  Whether the chancellor erred in finding that Janet had produced sufficient evidence to revoke the divorce.

III.  Whether the chancellor erred in failing to strike Janet's motion to reconsider as untimely and for failure to set forth significant facts, and subsequently holding a hearing on the matter.

IV.  Whether the chancellor erred in not dismissing the action to set aside the divorce because Janet did not file a revivor after Charles's death.

**HOLDING OF THE COURT OF APPEALS**

¶16. The Court of Appeals held that the chancellor should not have conducted a hearing on the matter, because it lacked jurisdiction. This Court previously has heard a case involving a petition to revoke divorce which was filed by only *one* spouse *after* the death of the other spouse. ***Wells v. Roberson***, 209 So. 2d 919 (Miss. 1968). However, the Court of Appeals correctly found that those facts were distinguishable from the present matter. The court further noted that no cases directly on point could be found. ***Carlisle v. Allen***, 2009 WL 1758864, *4, ¶15 (Miss. Ct. App. June 23, 2009). Therefore, this is an issue of first impression in Mississippi.

¶17. The Court of Appeals found that the most analogous cases are those in which a married couple files for divorce and one of the parties dies before a valid divorce decree is entered. In such cases, this Court has held, "upon the death of one of the parties to a purely

6

divorce action, before the entry of a final decree . . . the action may not be continued and no final decree of divorce may be entered thereafter, since . . . there is then no status of marriage upon which the final decree of divorce may operate." *Pittman v. Pittman*, 375 So. 2d 415, 416 (Miss. 1979) (quoting 104 A.L.R. 654). The Court of Appeals also noted that this Court recently has said, "The law regarding the death of one of the parties in a divorce action, as set out in *Pittman*, is still valid." *Barton v. Barton*, 790 So. 2d 169, 173 (Miss. 2001).

¶18. Relying on what were considered to be analogous cases, the Court of Appeals held that "substitution of another party in Charles's place is not proper." *Carlisle*, 2009 WL 1758864, *4, ¶17. Reasoning that the purpose of revoking a divorce is to "reunite two formerly married parties as a married couple," the Court of Appeals held that no purpose would be served in revoking the divorce because there is "no status of marriage upon which . . . [to] operate." *Id.*

¶19. The Court of Appeals agreed with the chancery court that Janet had put on sufficient evidence of her reconciliation with Charles prior to his untimely death. *Id.* at *4, ¶18. However, the court found the trial court lacked the "power" to reinstate the marriage because of Charles's death. *Id.* at * 4, ¶18. The Court of Appeals held that the chancellor erred in conducting an evidentiary hearing on the matter and reinstated the final judgment of divorce. The judgment of the chancery court was reversed and rendered. Janet then filed a petition for writ of certiorari, which this Court granted.

## ANALYSIS

¶20. The findings of a chancellor are subject to an abuse-of-discretion standard on review. *Barton v. Barton*, 790 So. 2d 169, 175 (Miss. 2001) (quoting *Cummings v. Benderman*, 681

7

So. 2d 97, 100 (Miss. 1996)) (This Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.")  However, questions of law will be reviewed *de novo*.  **Keener Props., LLC v. Wilson**, 912 So. 2d 954, 956 (Miss. 2005) (citing **Weissinger v. Simpson**, 861 So. 2d 984, 987 (Miss. 2003)).

¶21.    The statute regulating revocation of divorce reads as follows:

> The judgment of divorce from the bonds of matrimony may be revoked at any time by the court which granted it, under such regulations and restrictions as it may deem proper to impose, upon the joint application of the parties, and upon the production of satisfactory evidence of their reconciliation.

Miss. Code Ann. § 93-5-31 (Rev. 2004). Each of the statute's requirements have been met, and therefore, the chancellor did not err in holding a hearing on the matter and revoking the judgment of divorce.

¶22.    The Court of Appeals erroneously ruled that petitions to revoke a divorce should be governed by the rules which govern petitions to dissolve a marriage.  We have said, "Divorce in Mississippi . . . is purely and simply a creature of statute.  The revocation or setting aside of divorce decrees is also governed *entirely by statute*."  **Wells v. Roberson,** 209 So. 2d 919, 923 (Miss. 1968) (emphasis added). It is well-established that "when a right is given solely by statute it is subject to the terms named in the statute."  **Price v. Price**, 202 Miss. 268, 32 So. 2d 124, 126 (Miss. 1947).  Further, this Court has said, "when a special and particular statute deals with a special and particular subject, its particular terms as to the special subject control over general statutes dealing with the subject in general."  **Id.** (citing **Gully v.**

8

*Lumbermen's Mut. Cas. Co.,* 176 Miss. 388, 397, 166 So. 541 (1936)). The Legislature has clearly laid out the standards which must be met in order to have a divorce revoked, and those are separate requirements from those governing the grant of a divorce decree.

### I. Jurisdiction

¶23. Carlisle alleges that the application to revoke the divorce abated upon Charles's death. In support of this argument, Carlisle points to this Court's holding in the nearly-two-century-old case, *Gerault v. Anderson*, 1 Miss. 30, 1818 WL 456 (June Term 1818), wherein we said, "on the death of [a] party his interest ceases, and the jurisdiction of the court ceases also." *Id.* at \*2. Carlisle further points to this Court's opinion in *Wells*, the only case in which this Court has dealt with a similar fact scenario. The *Wells* Court acknowledged the *Gerault* holding and other similar precedents. *See Wells*, 209 So. 2d at 922.

¶24. However, the holding in *Wells* was not premised on the trial court's jurisdiction, but rather on the failure of the petitioner to meet each of the statutory requirements. *Id.* The *Wells* Court relied on the principle discussed above, "when a right is given solely by statute it is subject to the terms named in the statute." *Price*, 32 So. 2d at 126. In *Wells*, we found that the petitioner did not meet the terms of Section 2747 of the 1942 Mississippi Code (which today is Mississippi Code Section 93-5-31) because the petition was not filed jointly – rather it was an *ex parte* petition filed after the husband's death. Because the "statute fixes the conditions upon which the right [to have a divorce revoked] may be asserted, the conditions are an integral part of the right thus granted – are substantive conditions, the observance of which is essential to the assertion of the right." *Wells*, 209 So. 2d at 923.

9

Therefore, this Court decided ***Wells*** based on whether each of the requirements of the statute had been met, as we do today.

¶25. Further, while Carlisle cites many historical precedents for the proposition that the court's jurisdiction ceases upon the death of one of the parties, he overlooks a central element required for a jurisdictional argument. While alimony, child support, and visitation are personal matters, actions touching on the marriage relationship itself, including divorce, are not personal — they are *in rem* actions,[1] and are subject to statutory control. Indeed, one spouse may obtain a divorce without *personal* service of process on the other. *See, e.g., **Noble v. Noble***, 502 So. 2d 317, 320 (Miss. 1987).[2]

---

[1] Deborah H. Bell, *Bell on Mississippi Family Law* 436 (2005) ("Adjudication of marital status and custody are considered to be in rem actions. A court with subject matter jurisdiction may enter a fault-based divorce or custody decree without personal jurisdiction over the defendant."); "An action for divorce is regarded as a form of in rem action, permitting adjudication of rights based on the domicile of one of the parties — and therefore the marriage — in a particular state. According to the United States Supreme Court, 'Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders and . . . can alter within it own borders the marriage status of the spouse domiciled there.'" *Id.* at 437 (quoting ***Williams v. North Carolina***, 317 U.S. 287, 299, 63 S. Ct. 207, 87 L. Ed. 279 (1942)).

[2] In ***Noble***, we stated:

> notwithstanding this Court's holding that the [chancellor] properly held that it could not render a personal monetary judgment against the non-resident defendant on [a summons by publication], it was not totally without jurisdiction. The [chancellor] did have jurisdiction over the subject matter of the divorce action and personal jurisdiction over one of the parties to the marriage who did meet residency requirements for a divorce action. Miss. Code Ann. § 93-5-5 (Supp. 1986). This statutory authority and the publication notice gives the chancery court its authority *to grant a divorce* on constructive notice by publication.

***Noble***, 502 So. 2d at 320 (emphasis added).

10

¶26. The Court of Appeals relied on this Court's holding that "upon the death of one of the parties to a *purely divorce action* before the entry of a decree therein, the action abates." *Pittman*, 375 So. 2d at 416 (emphasis added). As clearly stated by this Court, that rule applies only to a purely divorce action. This is because "the dissolution of the marriage relation [which is the relief the parties seek from the court] *is already accomplished* by the prior death of one of the parties." *Id.* (emphasis added). Thus, there is no status of marriage for the court to dissolve.[3]

¶27. Here, the Legislature drafted and passed legislation which allows chancellors to revoke divorces upon fulfillment of all the statutory requirements, even after the death of one of the parties.[4] In the present matter, the chancellor found that all the requirements of Mississippi Code Section 93-5-31 had been met. Therefore, because the matter is one touching upon the marital status of the parties and is an *in rem* action, the trial court

---

[3] The dissent urges this Court to analyze the present matter based upon the marriage and divorce statutes and our precedents regarding such statutes. However, the dissent fails to recognize that, upon the death of one of the parties seeking a divorce, there is no status of marriage remaining for the court to dissolve – the relief the parties sought has been accomplished through the death of one of the parties. Further, the marriage statutes also are distinguishable, in that entry into a marriage requires solemnization of the marriage between the "persons" – requiring that both persons be present for the marriage to be solemnized. *See* Miss. Code Ann. §§ 93-1-17, 93-1-19 (Rev. 2004).

[4] Interestingly, the dissent correctly states, "The privilege to amend a statute, not constitutionally infirm, does not rest with this Court" (quoting *Mississippi Ethics Commission v. Grisham*, 957 So. 2d 997, 1003 (Miss. 2007)). However, that is exactly what the dissent proposes this Court do – amend the statute to mean "at any time *during the life of both parties*." It is the Legislature, and not this Court, that should make such a change to the statute's meaning. As the statute is written, there is no mention of the death of the parties – and we will not now "engraft" such a meaning onto the clear and unambiguous language of the statute.

11

maintained jurisdiction in order to make that determination.[5] The ***Gerault*** case cited by Carlisle ultimately has no application whatsoever. According to specific language from the case, "[i]t was an action in personam . . . ." ***Gerault***, 1818 WL 456 at *2. Accordingly, the chancery court maintained jurisdiction over the marital status of Janet at all relevant times in the present matter.

## II. Statutory Requirements

¶28.    Mississippi Code Section 93-5-31 makes it clear that a divorce may be revoked when the following requirements have been met: (1) at *any* time (with no reference to the death of one of the parties), (2) by the court which granted it, (3) under such regulations and restrictions as [the court which granted the divorce] may deem proper to impose, (4) upon the *joint* application of the parties, and (5) upon the production of *satisfactory evidence* of their reconciliation. *See* Miss. Code Ann. 93-5-31 (Rev. 2004).

¶29.    Since the Legislature, in writing Section 93-5-31, did not limit the time frame in which a couple may pursue a revocation of divorce, Janet is within the applicable time frame to have her divorce revoked. Furthermore, the petition was filed in and granted by the Chancery Court of Pearl River County, the court which granted Charles and Janet's divorce. The chancery court imposed no regulations and restrictions on the revocation, and the

---

[5] The dissent asks the question, "does the Majority take the untenable position that because a child custody action is *in rem*, a court has authority to award the custody of a child to a dead person?" Of course not. The dissent clearly forgets that the polestar consideration in a child custody action is the best interest of the child – and awarding custody of a child to a deceased party clearly would not be in the child's best interest. ***Albright v. Albright***, 437 So. 2d 1003, 1005 (Miss. 1983). The dissent's example is absurd.

application to revoke the divorce and testimony presented at the hearing clearly showed that the application for revocation of divorce was a joint application.[6]

¶30.    Finally, the chancellor, in his discretion, must determine whether satisfactory evidence of reconciliation was produced at trial.  As stated above, this Court has held that it will not disturb a chancellor's factual findings when supported by substantial evidence, unless the Court can say with reasonable certainty that the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard.  **Barton,** 790 So. 2d at 175.  The chancellor was not manifestly wrong in finding that there was sufficient evidence of reconciliation and revoking the divorce of Charles and Janet Allen. The Court of Appeals also agreed that Janet had introduced sufficient evidence of her reconciliation with Charles.   **Carlisle**, 2009 WL 1758864, *4, ¶18.[7]

¶31.    The requirements of Mississippi Code Section 93-5-31 have been met in their entirety. The chancellor did not err in so finding and granting the application to revoke the divorce.

### III.  Sufficiency of Janet's Motion to Reconsider

---

[6] This factor distinguishes the matter at hand from **Wells v. Roberson**, 209 So. 2d 919 (Miss. 1968), wherein this Court reversed a chancellor's revocation of divorce upon an *ex parte* application and hearing after the death of one of the spouses.

[7] The dissent argues that the surviving party, in this case Janet, was able to present unrefutable evidence because the deceased could not speak for himself at trial, nor could he change his mind prior to trial.  However, our chancellors are vested with discretion to determine if the evidence of the couple's reconciliation is satisfactory – and this Court must review only whether substantial evidence supports the chancellor's decision.

¶32.    Carlisle argues that Janet's motion for reconsideration in the trial court was untimely filed under Mississippi Rule of Civil Procedure 59[8] because it was filed eleven days after the entry of the judgment, rather than ten.   However, Janet argues that her motion for reconsideration was not a motion for a new trial, as contemplated by Rule 59, because there had not been a trial prior to her motion for reconsideration being filed.   Rather, Janet contends the motion is a motion for relief from judgment under Rule 60,[9] which must have been made only within a reasonable time.   Janet asserts that eleven days after the entry of the judgment is a reasonable time.

¶33.    This Court, in ***Cannon v. Cannon***, 571 So. 2d 976, 978 (Miss. 1990), said that it is "reasonable to consider [a party's motion for reconsideration] as one under Rule 60(b)" when the motion does not state that it was brought under Rule 59 and was filed more than ten days after the entry of final judgment in the case.   We further stated, "How a court treats a motion

---

[8]**Rule 59.  New Trials.  Amendment of Judgments.**
  (a) **Grounds.** . . . On a motion for a new trial in an action without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings and conclusions, and direct the entry of a new judgment.
  (b) **Time for Motion.**   A motion for a new trial shall be filed not later than ten days after the entry of judgment.

Miss. R. Civ. P. 59.

[9] **Rule 60.  Relief from Judgment or Order.**
        **(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc.**  On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
. . . (6) any other reason justifying relief from the judgment.
The motion shall be made within a reasonable time.

Miss. R. Civ. P. 60(b)(6).

14

for reconsideration turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e). If it is after that time, it falls under Rule 60(b)." *Id*. at 978 n.2. Here, the motion did not specify that it was brought pursuant to Rule 59, and it was filed more than ten days after the entry of the order to quash. Therefore, it should be considered a motion for relief under Rule 60. We have said that a trial court has "considerable discretion, though not unfettered discretion" in reviewing claims under Rule 60(b). *Id.* (quoting *H & W Transfer & Cartage Service, Inc. v. Griffin*, 511 So. 2d 895, 898-99 (Miss. 1987). In the present matter, the chancellor did not abuse his discretion under Rule 60(b)(6).

¶34. Carlisle further asserts that Janet's motion did not set forth significant facts regarding reconciliation as required by the trial court's order quashing the application to revoke. Janet's motion for reconsideration reads, "[Janet] would further show that she is ready at the Court's convenience to prove to the Court through testimony and other evidence that there was a complete reconciliation." The chancellor granted a hearing on the matter in order for her to do so. Carlisle cites no authority for the proposition that Janet's motion did not sufficiently address the evidence she would present regarding the reconciliation. Therefore, this issue is without merit.

### IV. Revivor

¶35. Finally, Carlisle complains that Janet did not comply with Mississippi Code Section 15-1-69, which reads:

> If in any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise avoided or defeated, by the death of any party thereto . . . the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original

suit . . . and his executor or administrator may, in case of the plaintiff's death, commence such new action, within the said one year.

Miss. Code Ann. § 15-1-69 (Rev. 2003). However, as discussed in Section I of this opinion, the action was not abated upon the death of Charles. Therefore, Section 15-1-69 is inapplicable and this issue is without merit.

## CONCLUSION

¶36. Because Janet met every requirement in Mississippi Code Section 93-5-31 to have a divorce revoked, the Court of Appeals erred in reversing the chancery court's revocation of the Allens' divorce. The chancery court maintained proper jurisdiction, the motion to reconsider was not untimely under Rule 60, and no revivor was necessary under the facts of this case. Therefore, the judgment of the Court of Appeals is reversed and rendered. The judgment of the Chancery Court of Pearl River County is reinstated and affirmed.

¶37. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND RENDERED. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS REINSTATED AND AFFIRMED.**

**CARLSON, P.J., DICKINSON, KITCHENS AND CHANDLER, JJ., CONCUR. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND LAMAR, J. LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., GRAVES, P.J., AND RANDOLPH, J.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶38. Justice Lamar has astutely honed in upon the controlling, nearly two-century-old holding of this Court in ***Gerault v. Anderson***, 1 Miss. 30, 1818 WL 456 (June Term 1818), that "on the death of [a] party his interest ceases, and the jurisdiction of the court ceases also." ***Id***. at *2. *See also* ***Owen v. Abraham***, 233 Miss. 558, 561, 102 So. 2d 372, 373

16

(1958) (quoting Griffith's Mississippi Chancery Practice, Section 591) (the "impossibility of" litigation "carried on by or against any deceased person[,]" is "apparent . . . upon its mere mention"). Application of that principle in a divorce-revocation context aligns with the logical and well-reasoned decisions by the courts of our sister states. *See **Dunevant v. Dunevant***, 142 N.C. App. 169, 175, 542 S.E.2d 242, 246 (2001) ("the trial court may not set aside a valid divorce decree and thereby revive the marital status of a party who is deceased."); ***Hill v. Lyons***, 550 So. 2d 1004, 1006 (Ala. Civ. App. 1989) (following the death of one party, "upon timely motion the trial court had jurisdiction to amend, alter, or modify the [divorce] decree[,]" insofar as it "affected property rights of the parties[10] . . . . The trial court did not, however, have the ***jurisdiction*** to change the adjudged *marital status* of the parties.") (emphasis added); ***Cox v. Dodd***, 242 Ala. 37, 41, 4 So. 2d 736, 739 (1941) (quoting 17 Am. Jur. § 462, p. 378) (when a divorce judgment does not affect property rights, "[p]roceedings to vacate it will not lie after the death of one of the parties. *The only object which could be attained would be sentimental in its nature, for the death of the parties effectually severs the marriage relation and the practical result of the judgment or decree*

_____

[10]But according to Janet, addressing substitution under Mississippi Rule of Civil Procedure 25:

> [t]he case at bar is not an adversarial action in its genesis; it is not an action to recover money or to enforce a contract, a debt, land rights, etc. In such adversarial actions, a substituted party can potentially recover or provide the relief sought in the suit. However, *in the case at bar, a substituted party cannot provide the relief sought by [Janet], i.e. marriage.* She cannot be married to an estate and certainly does not want to be married to another person substituted in place of [Charles].

(Emphasis added). Thus, even Janet acknowledges that only one of the two necessary parties remains alive, and the deceased party cannot be substituted.

*would not be affected.* On the other hand, where the judgment or decree affects property rights, the death of one party or both parties does not affect the right of the unsuccessful party or his or her representative to institute vacation proceedings. This is permitted, *not for the purpose of continuing the controversy touching the right to a divorce itself*, but for the ascertainment of whether the property has been rightly diverted from its appropriate channel of devolution.") (Emphasis added.)

¶39. In spite of **Gerault** and the above persuasive authority, a majority of our Justices opt to judicially engraft into the "at any time" language of Mississippi Code Section 93-5-31 the permissibility of a divorce revocation "even after the death of one of the parties." (Maj. Op. at ¶¶ 27-28) (citing Miss. Code Ann. § 93-5-31 (Rev. 2004)). "The privilege to amend a statute, not constitutionally infirm, does not rest with this Court." ***Miss. Ethics Comm'n v. Grisham***, 957 So. 2d 997, 1003 (Miss. 2007). As the statute makes no reference regarding the death of a coapplicant before decree or judgment, this Court has no authority to engraft such upon it. If the Legislature so desires, a statutory amendment to that effect (assuming the constitutionality thereof) is permissible. But that amendment does not lie within the province of this Court. For now, "on the death of [a] party his interest ceases, and the jurisdiction of the court ceases also." **Gerault**, 1818 WL 456 at *2. *Ita lex scripta est.*[11]

¶40. The lack of prudence in the Majority's approach becomes apparent when considering statutes pertaining to divorce and marriage. Mississippi Code Section 93-5-2 provides, in pertinent part, that:

---

[11]"So the law is written." Black's Law Dictionary 966 (4th ed. 1968).

(1) Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, *but only upon the joint complaint of the husband and wife* or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process.

. . .

(4) *Complaints for divorce on the ground of irreconcilable differences must have been on file for sixty (60) days before being heard.* Except as otherwise provided in subsection (3) of this section, a joint complaint of husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process, for divorce solely on the ground of irreconcilable differences, shall be *taken as proved and a final judgment entered thereon*, as in other cases and without proof or testimony in termtime or vacation . . . .

Miss. Code Ann. § 93-5-2 (Rev. 2004) (emphasis added). This statute likewise makes no reference to the death of one of the parties following the filing of a joint complaint (evidencing intent to divorce), but prior to the hearing and/or final judgment. Yet this Court has held that "[t]he authorities are clear that the death of complainant in the divorce action prior to the execution and entry of the final decree by the lower court *ended the marriage* of the parties and *canceled fully the bill* of complaint for divorce and incidental property relief."

19

***Barton v. Barton***, 790 So. 2d 169, 173 (Miss. 2001) (quoting ***Pittman v. Pittman***, 375 So. 2d 415, 416 (Miss. 1979)) (emphasis added).  It is no different on appeal.  *See **Howard v. Howard***, 243 Miss. 68, 71, 137 So. 2d 191, 192 (1962) ("the death of either party pending an appeal from a judgment in a divorce action abates the action insofar as it affects the mere marital status . . . .").  No authority exists for the proposition that this statute and the relief sought should be different.

¶41.    But even if one would argue that divorce is distinguishable because death effectively accomplishes the chief purpose for such an action by dissolving the marriage status, consider the effect of the death of one of the parties while attempting to establish marriage status.  A marriage is invalid:

> *unless* the *contracting parties shall have obtained a marriage license* as otherwise required by law, *and* unless also the *marriage, after such license shall have been duly issued therefor, shall have been performed by or before any person, religious society, institution, or organization authorized by sections 93-1-17 and 93-1-19 to solemnize marriages*.  Failure in any case to comply with *both prerequisites* aforesaid, which shall be construed as *mandatory* and not merely directory, shall render the purported marriage absolutely void.

Miss. Code Ann. § 93-1-15(1) (Rev. 2004) (emphasis added).  This statute makes no reference to the death of one of the parties following the lawful acquisition of a marriage license (evidencing intent to marry), but prior to solemnization of the marriage.  Applying

the Majority's reasoning, the absurd result of a marriage being solemnized despite the death of one prospective spouse extends beyond the realm of legal permissibility.

¶42.    *Gerault* is sound because of its bright-line holding, i.e., jurisdiction over an individual ceases at death. *See Gerault*, 1818 WL 456 at \*2. The Majority argues that *Gerault* is inapplicable because it involved an *in personam* action, while the present matter "is one touching upon the marital status of the parties and is an *in rem* action . . . ." (Maj. Op. at ¶ 27) (citing *Gerault*, 1818 WL 456 at \*2). Assuming *arguendo* that the adjudication of marital status and custody are *in rem* actions for which "one spouse may obtain a divorce without *personal* service of process on the other[,]"[12] (Maj. Op. at ¶ 25), the pretension that a distinction should be accorded *in rem* versus *in personam* disappears when considering the effect of a necessary party's death in divorce and child-custody actions. This Court has clearly spoken to the divorce context. *See* ¶ 40 *supra* (citing *Barton*, 790 So. 2d at 173 (quoting *Pittman*, 375 So. 2d at 416); *Howard*, 137 So. 2d at 192). Similarly, does the Majority take the untenable position that because a child-custody action is *in rem*, a court has authority to award the custody of a child to a dead person? Surely not. Consistent with *Gerault*, when a necessary party to a divorce, divorce revocation, or child-custody action dies, the trial court's authority to alter either the marriage status or child custody ceases. The application of *Gerault* in such circumstances is eminently correct, and the *in rem/in personam* distinction is of no import.

---

[12]However, our irreconcilable-differences divorce statute requires "the joint complaint of the husband and wife or a complaint where the defendant has been personally served with process . . . ." *See* Miss. Code Ann. § 93-5-2(1) (Rev. 2004).

¶43.  The Majority opinion casts aside *Gerault*'s compelling logic and longstanding vintage, and instead substitutes what amounts to a precarious "intent" standard.  In cases involving the death of a necessary party, applying this same "intent" standard to its logical extreme would sanction divorces prior to a final decree because the parties' "intent" was expressed in the joint complaint, and marriages prior to solemnization because of the parties' "intent" expressed in acquisition of a marriage license.  Under the Majority's approach, should we not begin accepting unsigned wills because the decedent has shown his "intent" to direct the disposition of property?  Applying the Majority's interpretation of Section 93-5-31, if both persons execute a joint application and one dies, albeit before it is filed,[13] sufficient "intent"[14] is shown for the revocation of a divorce as long as it is confirmed by the surviving applicant, who effectively gets to present irrefutable evidence because dead persons can neither speak nor change their mind prior to trial.[15]  Such an approach is legally erroneous and practically untenable, a legal folly.

¶44.  This decision can have far-reaching, ill consequences on interrelated areas of law.  For example, the law of descent and distribution provides that "[a]ll personal property situated in this state shall descend and be distributed according to the laws of this state regulating the descent and distribution of such property . . . .  The widow of such deceased person shall take

---

[13]There is no mention of a filing requirement in Section 93-5-31.  *See* Miss. Code Ann. § 93-5-31 (Rev. 2004).

[14]In the event that the court also finds "satisfactory evidence of their reconciliation."  Miss. Code Ann. § 93-5-31 (Rev. 2004).

[15]Carlisle's testimony that he previously had prepared four or five revocation applications for Charles, each of which Charles disposed of, clearly evinces that any "intent" inferred from the application is tenuous.

her share in the personal estate according to the laws of this state." Miss. Code Ann. § 91-1-1 (Rev. 2004). In the absence of a will, if a divorce may be revoked despite the prejudgment death of one of the parties, then the "widow of such deceased person," otherwise unrecognized, gains significant property rights. *See* Miss. Code Ann. §§ 91-1-7 ("[i]f a husband die intestate and do not leave children or descendants of children, his widow shall be entitled to his entire estate, real and personal, in fee simple, after payment of his debts; but where the deceased husband shall leave a child or children by that or a former marriage, or descendants of such child or children, his widow shall have a child's part of his estate, in either case in fee simple."); 91-1-11 ("[w]hen any person shall die possessed of goods and chattels or personal estate not bequeathed, the same shall descend to and be distributed among his or her heirs in the same manner that real estate not devised descends.") (Rev. 2004). Under the Majority's approach, these substantial property rights are acquired *nunc pro tunc* based upon an unconsummated "intent" to revoke the divorce,[16] despite the irrefutable fact that at the time of death, the parties were divorced.

¶45.    Upon his death, Charles's "time" expired. The trial court was correct in initially quashing the joint application to revoke the divorce based upon Charles's death, but erred in subsequently "entertain[ing] a motion to reconsider this finding should [Janet] timely file such a request and show sufficient facts evidencing a satisfactory reconciliation of the parties." For all of the above reasons, I join Justice Lamar's dissent, which declares that "a

---

[16]Similarly, the Majority's approach would allow the surviving party to claim Social Security benefits as a widow, and partake of other tax advantages reserved for the spouse of a deceased, despite the undisputed fact that the parties were divorced at the time of death.

23

trial court is without authority to alter the marital status of a party who is deceased." (Dis. Op. at ¶ 47). I likewise dissent.

**WALLER, C.J., AND LAMAR, J., JOIN THIS OPINION.**

**LAMAR, JUSTICE, DISSENTING:**

¶46. The issue before the Court is whether the death of one of the parties to a joint application to revoke divorce deprives the trial court of jurisdiction to proceed on the joint application after the party's death. The question of jurisdiction is basic and fundamental, and if there is an absence of jurisdiction – over either the person or the subject matter – the court is without power to act. At common law, the death of either party generally put an end to an action. In recognition of this principle, this Court long ago held that "on the death of [a] party his interest ceases, and the jurisdiction of the court ceases also." *Gerault v. Anderson*, 1 Miss. 30, 1818 WL 456, *2 (June Term 1818). Griffith's Mississippi Chancery Practice provides that: "A valid judgment cannot be rendered in favor of two persons, one of whom at the time is dead. Such judgment is void." Bridges & Shelson, *Mississippi Chancery Practice* § 620 (2000 ed.). "A proceeding to set aside a divorce decree, that is valid on its face and that deals exclusively with the parties' marital status, is abated upon a former spouse's death." 24 Am. Jur. 2d *Divorce and Separation* § 430 (2008).

¶47. Our statutes provide a process whereby a judgment of divorce can be revoked. Section 93-5-31 of the Mississippi Code states:

24

> The judgment of divorce from the bonds of matrimony may be revoked at any time by the court which granted it, under such regulations and restrictions as it may deem proper to impose, upon the joint application of the parties, and upon the production of satisfactory evidence of their reconciliation.

Miss. Code Ann. § 93-5-31 (Rev. 2004). The majority finds that, because the conditions of the statute were met, Janet is entitled to proceed on the application to revoke divorce, unaffected by Charles's death. I disagree. This action dealt exclusively with the parties' marital status, an action that was strictly personal to each of them,[17] one which could not be assigned, nor could another party be substituted in their stead. Thus, the action must necessarily abate upon either party's death. I find nothing in the language of the statute that compels me to ignore the well-founded rule that "on the death of [a] party his interest ceases, and the jurisdiction of the court ceases also." *Gerault*, 1818 WL 456, at *2. I would find that a trial court is without authority to alter the marital status of a party who is deceased. I therefore dissent.

**WALLER, C.J., GRAVES, P.J., AND RANDOLPH, J., JOIN THIS OPINION.**

---

[17]*See e.g.,* ***Larocca v. Larocca***, 597 So. 2d 1000, 1004 (La. 1992) (Divorce is a personal action that abates upon the death of one of the parties); ***In Re Estate of Williams***, 2003 WL 1961805, at *6 (Tenn. Ct. App., Apr. 28, 2003) (same); ***In Re Marriage of Himes***, 965 P.2d 1087, 1093 (Wash. 1998) (same).

25