# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01831-SCT

*KAREN COLLINS*

*v.*

*PINNACLE TRUST, EXECUTOR OF THE
ESTATE OF STUART M. IRBY, DECEASED,
SUCCESSOR TO THE CONSERVATORSHIP OF
STUART M. IRBY, SR., JOSEPH IRBY, JEFF
RICKLES, AND RICHARD MONTAQUE AS CO-
CONSERVATORS OF STUART M. IRBY, SR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2012 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | TERRIS C. HARRIS |
| | DENNIS C. SWEET, III |
| | BO ROLAND |
| | DENNIS C. SWEET, IV |
| | WILLIAM P. FEATHERSTON, JR. |
| ATTORNEYS FOR APPELLEES: | LUKE DOVE |
| | LAURA M. GLAZE |
| | A. M. EDWARDS, III |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 02/13/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     The Chancery Court for the First Judicial District of Hinds County, Mississippi,

appointed conservators over the person and estate of Stuart Irby.  Approximately one year

later, Karen Collins Irby, Stuart's ex-wife, filed pleadings to invalidate the conservatorship

and set aside the transactions of the conservators. The chancery court denied Karen's petition to invalidate the conservatorship and, finding no error, we affirm the judgment of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 11, 2009, Karen and Stuart were involved in a deadly automobile collision with a second vehicle. Karen was driving and Stuart suffered serious injuries, including head trauma. As a result of his injuries, Stuart developed impulse-control issues.

¶3. On March 22, 2011, Stuart filed a Petition for the Temporary and Permanent Appointment of a Conservator for his Estate and Person ("Petition"). Stuart was the only petitioner. Stuart sought a conservatorship under Mississippi Code Sections 93-13-251, *et. seq*,[1] and alleged that he was "incapable of managing his own estate due to a mental weakness, due to a traumatic injury to the frontal lobe of his brain sustained in an automobile accident February 11, 2009."

¶4. Affidavits from two medical providers, Clea Evans, Ph.D., and Sudhakar Madakasira, M.D., were attached to the petition. Dr. Evans, a clinical neuropsychologist, averred that she

---

[1]Mississippi Code Section 93-13-251 (Rev. 2013) provides in relevant part that

> If a person is incapable of managing his own estate by reason of advanced age, physical incapacity or mental weakness . . . the chancery court of the county wherein the person resides . . . upon petition of the person or of one or more of his friends or relatives, may appoint a conservator to have charge and management of the property of the person and, if the court deems it advisable, also to have charge and custody of the person subject to the direction of the appointing court.

2

had examined Stuart within the last thirty days and was of the opinion that he could not manage his own estate due to the damage to the frontal lobe of his brain and recommended that a conservator be appointed over his property and person. Dr. Madakasira, a psychiatrist, averred that he had examined Stuart within the last sixty days and was of the opinion that he could not manage his own estate by reason of mental weakness and recommended that a conservator be appointed over his property and person. Stuart also requested leave to file additional statements from medical providers and attorneys under seal.

¶5. On March 30, 2011, a hearing was held on Stuart's Petition. Mississippi Code Section 93-13-253 requires that "upon the filing of the petition, the clerk of court . . . shall cause not less than five (5) days' notice thereof to be given to the person for whom the conservator is to be appointed . . . ." Section 93-13-253 further provides:

> Unless the court finds that the person for whom the conservator is to be appointed is competent and joins in the petition, the notice shall also be given to one (1) relative of the person for whom the conservator is to be appointed who is not the petitioner and who resides in Mississippi if such relative is within the third degree of kinship, preferring first the spouse, unless legally separated . . . .

Miss. Code Ann. § 93-13-253 (Rev. 2013). Stuart was present at the hearing, as was his brother, Charles, a resident of Tennessee. The chancery court asked if Stuart had been served, and was informed by Stuart's counsel that Stuart joined in the Petition and had waived process. The court did not discuss whether Stuart was competent to join in the petition. Karen, who was married to Stuart at the time of the hearing, did not receive notice of the hearing from the clerk of court.

3

¶6.　After reviewing the affidavits from the doctors supporting the petition, the chancery court granted the petition, and appointed Charles Irby, his brother Joe, and Stuart's son, Stuart Jr. as co-conservators over Stuart's estate.[2]　The court explained to Stuart that he would no longer be able to act on his own without going through his brothers and son, and asked him if he understood.　Stuart responded that he understood.　The chancery court entered a permanent Order Appointing Conservators of the State and Person of Stuart Irby reflecting its findings made at the hearing.

¶7.　On May 17, 2011, Stuart Irby filed a petition for divorce against Karen in the First Judicial District of Hinds County, Mississippi.　The conservatorship was not a party to the original divorce complaint.　On May, 26, 2011, the conservatorship filed a petition for leave to file an amended complaint for divorce to join the conservatorship as a party to the divorce proceedings in the chancery court.　The chancery court granted the conservators authority to file suit for divorce on Stuart's behalf and to ratify the petition for divorce previously filed by Stuart.　The conservators also were granted leave to execute documents necessary to carry the divorce proceeding to conclusion.

¶8.　Thereafter, a property-settlement agreement was reached in the divorce, which was signed by Karen and her counsel, Richard Montague as co-conservator over Stuart, and counsel for the Conservatorship.[3]　The property-settlement agreement was approved by the

---

[2]Joe and Stuart Jr. were both residents of Arkansas.

[3]Charles and Stuart Jr. had resigned as co-conservators and had been replaced by Jeff Rickels and Richard Montague.　Joe Irby remained a co-conservator.

4

chancery court and was incorporated as an exhibit to the final judgment of divorce filed in chancery court on December 12, 2011. The chancery court found that Stuart was entitled to a divorce, that the parties had agreed to a property settlement, and that the claim for divorce and the claims pertaining to property and alimony between Stuart and Karen had been finally decided. The judgment of divorce was certified as final under Mississippi Rule of Civil Procedure 54(b). Karen did not object to the conservatorship at any time during the divorce proceedings. No appeal was taken from the final judgment of divorce.

¶9. On January 17, 2012, Stuart died. On March 12, 2012, Karen filed a petition to invalidate the conservatorship and set aside transactions in the chancery court. Karen argued, for the first time, that she should have received five days' notice of the hearing appointing a conservatorship over Stuart under Mississippi Code Section 93-13-253. Karen argued that notice was not provided to her or to a Mississippi-resident relative of Stuart's, and that the conservatorship was invalid due to the lack of notice. Karen further argued that all transactions involving the conservatorship were, therefore, void. Lack of notice was the only basis Karen asserted to set aside the conservatorship.

¶10. On August 1, 2012, a hearing was held on Karen's petition to set aside the conservatorship, along with other matters related to Stuart's estate. The chancery court heard testimony from Dr. Clea Evans and Charles Irby. Dr. Evans, the neuropsychologist who had prepared an affidavit in support of Stuart's motion to appoint a conservatorship, testified that she had evaluated Stuart at the end of January and February of 2011, and that it was her opinion that Stuart needed a conservatorship at that time, because, after his accident, his history of addiction, bipolar disorder, and obsessive-compulsive disorder "worsened such

5

that his ability to consistently control his impulses and engage in socially appropriate behavior was compromised." Dr. Evans further testified that:

> [Stuart] had a lot of capacity and he had a lot of deficits. His abilities to comprehend and his reading comprehension, his language comprehension was fairly good. His verbal expression was compromised by some slurring of speech after his accident, but was fluent. He had retained at that point short-term memory for ongoing daily events [that] was fairly accurate. He was not disoriented or amnestic or confused.

¶11. Dr. Evans testified that, while Stuart was an intelligent man pre-injury and might know the correct answer on paper, at the time the conservatorship was imposed, he had problems following through with good reasoning and judgment in the real world. Dr. Evans further testified that Stuart was aware of the conservatorship, that they had discussed it for some time, that Stuart had agreed to it, and that he understood what he was agreeing to. Charles testified that he had discussed the conservatorship with Stuart prior to the March 2011 hearing, that Stuart appeared to understand what a conservatorship meant, and that Stuart had appeared to be competent to go forward with the decision to request that a conservatorship be created.

¶12. The chancery court denied the petition to set aside the conservatorship, finding that Stuart's petition was properly supported by the affidavits of two medical professionals. The court found that, at the March 30, 2011, hearing on Stuart's petition, it had examined the affidavits provided by the medical providers, had personally observed Stuart, and had questioned him with regard to whether he understood the proceedings. The chancery court noted that Stuart had represented to the court that he was aware of and understood the proceedings.

6

¶13. The chancery court further found that, although it did not specifically state that Stuart was "competent" in its order appointing a conservatorship, the court did find that he was competent to understand the proceedings. The chancery court found that, if it had determined that Stuart was not competent, the court would not have opened a conservatorship the day of the hearing, but would have instructed counsel to follow the alternative notice requirements under Mississippi Code Section 93-13-253. The chancery court concluded that, "[b]ecause Irby was competent and joined in the Petition, no statutory duty existed to provide [Karen], or any other person, with notice of the conservatorship hearing."

¶14. Karen now appeals the order denying her petition to set aside the conservatorship.

## DISCUSSION

¶15. On appeal, Karen raises the following five issues:

A. Whether the conservatorship is invalid due to failure to provide adequate notice under Mississippi Code Section 93-13-253;

B. Whether judicial estoppel prevents the conservatorship from asserting that Stuart Irby was competent;

C. Whether the conservatorship is invalid due to failure to file a certificate of a medical professional with the clerk of court under Mississippi Code Section 93-13-255;

D. Whether the conservatorship is invalid due to the conservators' failure to post a bond under Mississippi Code Section 93-13-17; and

E. Whether Stuart Irby lacked the power to commence a legal proceeding.

**A.** **Whether the conservatorship is invalid due to failure to provide adequate notice under Mississippi Code Section 93-13-253.**

**1.** **Standard of Review**

¶16. A chancellor's findings are subject to an abuse-of-discretion standard of review, and this Court will not disturb the "factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard."[4] "However, questions of law will be reviewed *de novo*."[5]

**2. The chancery court did not err in finding that the conservatorship was valid and that Karen was not entitled to notice of the hearing.**

¶17. Mississippi Code Section 93-13-251 provides in relevant part that,

> [u]nless the court finds that the person for whom the conservator is to be appointed is competent and joins in the petition, the [clerk of court] shall also [give five days notice of the hearing] to one (1) relative of the person for whom the conservator is to be appointed who is not the petitioner and who resides in Mississippi if such relative is within the third degree of kinship, preferring first the spouse, unless legally separated, then an ascendent or descendant, then a brother or sister. . . .

Karen argues that Stuart was not competent at the time of the hearing and therefore could not consent to the conservatorship, and that the conservatorship is invalid because neither she nor any other of Stuart's Mississippi-resident relatives were provided with notice by the clerk of court. The conservators argue that notice of the hearing was not required to be given to anyone other than Stuart because he filed his petition individually and was competent to do so.

---

[4] *Carlisle v. Allen*, 40 So. 3d 1252, 1256 (Miss. 2010) (citations omitted).

[5] *Id.*

¶18. In its order denying Karen's petition to invalidate the conservatorship, the chancery court found that, at the hearing to appoint a conservatorship in 2011, the court:

> questioned Irby with regard to his understanding of the proceeding. Although this Court did not specifically state that Irby was "competent," this Court did find that Irby was competent to understand the conservatorship. If this Court had determined Irby to be incompetent, this Court would not have opened a conservatorship on the date of the hearing. Instead, this Court would have instructed counsel to follow the alternative notice requirements set forth in Miss. Code Ann. § 93-13-253. Therefore, this Court did find that Irby was competent to understand the conservatorship proceeding on March 30, 2011, whether or not the same was explicitly set forth in its bench opinion.

Therefore, the chancery court denied Karen's petition.

¶19. The record reflects that the chancellor asked Stuart if he understood the proceedings at the March 30, 2011, hearing and that Stuart indicated that he did. On August 1, 2012, the chancery court heard testimony at the hearing on Karen's motion to invalidate the conservatorship from Dr. Evans and Charles Irby. Dr. Evans testified that she had evaluated Stuart at the end of January and February of 2011, that Stuart was aware of the conservatorship, that they had discussed it for some time, that Stuart had agreed to it, and that he had understood what he was agreeing to.

¶20. Charles testified that he had discussed the conservatorship with Stuart prior to the March 2011 hearing, that Stuart had appeared to understand what a conservatorship meant, and that Stuart had appeared to be competent to go forward with the decision to request that a conservatorship be created. The testimony presented at the September 2012 hearing supported the chancellor's determination that Stuart was competent to join in the petition, even though he was not competent to manage his own affairs. Indeed, no evidence was presented that would show that Stuart was not competent to join his petition, and absent a

9

finding that Stuart was not competent to join the petition, Karen was not entitled to notice of the hearing. Therefore, we find no abuse of discretion and affirm the chancery court's determination that the conservatorship was not invalid due to lack of notice to Karen. This issue is without merit.

**B.      Whether judicial estoppel prevents the conservators from asserting that Stuart Irby was competent.**

¶21.    Karen argues that the conservators are judicially estopped from arguing that Stuart was competent because criminal charges against him were dismissed by the Circuit Court of Madison County, Mississippi, on November 2, 2011, in part because a psychiatric evaluation found that Stuart lacked the ability to confer with his legal counsel in preparation of a defense and that Stuart lacked the capacity to distinguish between right and wrong at the time of the crimes. The conservators argue that judicial estoppel does not apply in this case.

¶22.    Judicial estoppel "arises from the taking of a position by a party to a suit that is inconsistent with the position previously asserted in prior litigation."[6] In this case, Karen argues that the conservators should be estopped from now claiming that Stuart was competent for purposes of joining in his petition in March 2011 because Stuart benefitted from a finding that he was unable to assist in his legal defense to criminal charges in November 2011. There is no evidence that the conservators took any position with regard to Stuart's competency in the criminal matter. Indeed, the order of dismissal in the criminal matter states that the independent psychiatric examination of Stuart to evaluate Stuart's

---

[6] *Ivy v. Harrington*, 644 So. 2d 1218, 1222 (Miss. 2002) (citation omitted).

10

ability to assist in his defense was performed at the request of the State of Mississippi. Additionally, the conservators argue that Stuart was competent to join in his petition in March 2011, which was several months before Stuart was found incapable of assisting with his defense in the criminal matter. Therefore, we find that the conservators' position that Stuart was competent to join in the petition in March 2011 is not inconsistent with a position taken in prior litigation, and that judicial estoppel is not applicable to this case.

**C.     Whether the conservatorship is invalid due to failure to file a certificate of a medical professional with the clerk of court under Mississippi Code Section 93-13-255.**

¶23.    Mississippi Code Section 93-13-255 provides that, for a chancellor to determine whether a conservator is needed,

> at least two (2) physicians who are duly authorized to practice medicine in this state, or another state or one (1) such physician and a psychologist, licensed in this state or another state, each of whom shall be required to make a personal examination of the subject party, and each of whom shall make in writing a certificate of the result of such examination, which certificate shall be filed with the clerk of court and become a part of the record of the case.

Stuart's petition included affidavits of Dr. Evans and Dr. Madakasira, and it was filed in the chancery court on March 22, 2011. Both doctors averred that they personally had examined Stuart and that it was their opinion that Stuart was incapable of managing his own affairs and person due to mental weakness, and they further averred that a summary of Stuart's history and disability would be more fully explained in their reports, which would be submitted to the chancery court under seal.

¶24.    On appeal, Karen argues for the first time that the conservatorship is invalid due to failure to file the reports referenced in the affidavits provided by Dr. Evans and Dr.

11

Madakasira with the clerk. The conservators argue that the affidavits of Dr. Evans and Dr. Madakasira were filed with the court as attachments to the petition, were made part of the record, and satisfied the requirements of Section 93-13-255.

¶25. We find that the affidavits filed with Stuart's petition satisfy the requirements of Section 93-13-255, and that this issue is without merit.

**D. Whether the conservatorship is invalid due to the conservators' failure to post a bond under Mississippi Code Section 93-13-17.**

¶26. Mississippi Code Section 93-13-17 provides that "[e]very guardian, before he shall have authority to act, shall, unless security be dispensed with by will or writing or as hereinafter provided, enter into bond payable to the state, in such penalty and with such sureties as the court may require . . . ." The order appointing conservators of the estate and person of Stuart Irby reflects that the chancery court found that "the conservators may serve without the posting of a bond."

¶27. Karen argues, again for the first time on appeal, that the conservatorship is invalid due to the chancery court's failure to require the co-conservators to post a bond. The conservators argue that Section 93-13-17 addresses guardianship matters and does not apply to conservator. The conservators further argue that, even if a bond was required, such failure would be a curable defect and would not invalidate the conservatorship or the actions of the conservators. We find that this issue is procedurally barred from consideration because Karen failed to raise it in the chancery court.[7] Notwithstanding the procedural bar, and

---

[7] *Triplett v. Mayor & Bd. of Alderman of City of Vicksburg*, 758 So. 2d 399, 402 (Miss. 2000) ("This Court has long held that it will not consider matters

12

assuming without deciding that a bond should have been required, "mere irregularities in the appointment or proceedings are immune from collateral attack"; therefore, the absence of bond is a curable defect and this issue is without merit.[8]

**E.     Whether Stuart Irby lacked the power to commence a legal proceeding.**

¶28.    Karen argues that it was established that Stuart was a person of "unsound mind" on March 22, 2011, due to his February 2009 accident, because the chancery court determined that he was incapable of managing his own affairs and because the Circuit Court of Madison County dismissed the criminal charges against him. Therefore, Karen argues that Stuart lacked the capacity to commence a legal proceeding on March 22, 2011, and that the conservatorship is a nullity because Stuart was the only petitioner.

¶29.    This argument overlaps with Karen's argument that she was entitled to notice of the conservatorship hearing because Stuart was not competent to join in his petition. For all the reasons discussed above, we find that this issue is without merit and requires no further discussion.

**CONCLUSION**

¶30.    For the foregoing reasons, we find that the Chancery Court of the First Judicial District of Hinds County, Mississippi, did not err in denying Karen Collins's petition to set aside the conservatorship over Stuart Irby and invalidate all transactions. Therefore, we affirm the judgment of the chancery court.

---

raised for the first time on appeal.").

[8] *Matter of Estate of Moreland*, 537 So. 2d 1337, 1341 (Miss. 1989).

13

¶31.   **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**